Johnathan and Norma Reeves appeal from a summary judgment for defendants Jency Eldridge, Ben Porter and Ben Porter Real Estate of Huntsville, Inc., in the Reeveses' action based upon fraud and suppression of material facts in the resale of a used dwelling.[1]
We affirm.
The Reeveses' first issue is:
 "Did the trial court commit reversible error in granting summary judgment to defendants Jency Eldridge, Ben Porter and Ben Porter Real Estate before said *Page 965 
defendants complied with pending interrogatory and production of documents requests?"
Neither the request for production of documents nor the interrogatories to defendants Jency Eldridge, Ben Porter, and Ben Porter Real Estate of Huntsville, Inc., are in the record. There is nothing in the record to show that the matter sought to be discovered was crucial or even pertinent to the motion for summary judgment.
The Reeveses responded as follows to these defendants' motion for summary judgment:
 "Plaintiffs submit the affidavit of Jonathan [sic] Reeves in response to the affidavit of Jency Eldridge and further submit to the Court that there are issues of material fact in dispute and that therefore, Defendant Jency Eldridge's motion for summary judgment is due to be denied."
We find nothing in the record to indicate that the Reeveses sought to compel production of the documents or answers to the interrogatories. They made no request for a continuance of the hearing on the motion for summary judgment to allow such production or answers. Neither the Reeveses' motion for reconsideration nor their very thorough "Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration," filed several days after the summary judgment was granted, mentioned that items had not been produced or answers to interrogatories filed which would in any way affect the motion for summary judgment.
The mere pendency of discovery does not bar summary judgment. If the trial court from the evidence before it, or the appellate court from the record, can ascertain that the matter subject to production was crucial to the non-moving party's case (Parrish v. Board of Commissioners of Alabama State Bar,533 F.2d 942 (5th Cir. 1976)) or that the answers to the interrogatories were crucial to the non-moving party's case (Noble v. McManus, 504 So.2d 248 (Ala. 1987)), then it is error for the trial court to grant summary judgment before the items have been produced or the answers given. However, the burden of showing that these items are crucial is upon the non-moving party. He can do so by complying with Rule 56(f), Ala.R.Civ.P.,Water View Developments, Inc. v. Eureka, Inc., 512 So.2d 916
(Ala. 1987). Rule 56(f) provides: "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." A pending motion to compel production (Parrish, supra) and a motion to compel answers to interrogatories, which has been granted (Noble, supra) when the evidence before the court clearly shows that the evidence sought is crucial to the non-moving party's case, have been held sufficient compliance with Rule 56(f). However, when no such crucial evidence would be supplied by the production or by the answers to the interrogatories, it is not error for the trial court to grant summary judgment with discovery pending. Wallace v. Brownell Pontiac-GMC Co.,703 F.2d 525 (11th Cir. 1983); Noble v. McManus, supra. In Wallace, Judge Kravitch noted: "Most, if not all, cases involving a Rule 56(f) issue will be factually dissimilar. For this very reason, a blanket rule would be inappropriate." 703 So.2d at 528. The burden is upon the non-moving party to comply with Rule 56(f) or to prove that the matter sought by discovery is or may be crucial to the non-moving party's case. The Reeveses have not done this, and there is no merit in this issue.
The Reeveses' second issue is:
 "Did the trial court commit reversible error when it granted summary judgment in favor of defendants Jency Eldridge, Ben Porter and Ben Porter Real Estate?"
There was no confidential relationship between the defendants and the Reeveses. The gravamen of the fraud charge in Count I is that defendant Eldridge, for whose acts defendant Porter as qualifying broker of *Page 966 
Ben Porter Real Estate of Huntsville, Inc., and defendant Ben Porter Real Estate of Huntsville, Inc., as listing broker, are responsible, falsely stated, either willfully, recklessly, or mistakenly, that problems concerning water damage to the used dwelling that was being resold, which problems were listed in a termite report, had been "taken care of" when in fact they had not; and that $300 which was placed in escrow "would be more than enough to cover the damage" when in fact it was not.
On March 13, 1985, a real estate purchase contract was executed by Ms. Grubis, as seller, and the Reeveses as purchasers. The contract was conditioned on the Reeveses' obtaining a 30-year loan for all of the sales price except the $3,500 down payment. Ms. Grubis was to warrant title to be free from all encumbrances, with some non-pertinent exceptions. The contract provided that "the plumbing, wiring and mechanical equipment shall be in good working order when possession is given or title is passed." It was the Reeveses' responsibility to inspect the plumbing, wiring, and mechanical equipment prior to occupancy or closing. Ms. Grubis was to "furnish a letter from a licensed exterminating company certifying that the improvements are free of termites or damage caused by termites or other wood destroying insect infestation," and the contract provided, "The listing or selling agents do not warrant or guarantee the condition of this property. . . ."
The contract provided that in the event the Reeveses failed to carry out the contract, Ms. Grubis had the option of suing for breach of contract, reaffirming the contract and seeking specific performance, or accepting the earnest money as liquidated damages. If Ms. Grubis failed to carry out the contract, the Reeveses had the option of seeking specific performance or obtaining a refund of the earnest money plus reimbursement for certain expenses incurred by them. The contract contained the following clauses:
 "This contract states the entire agreement between the parties and merges in this agreement all statements, representations, and conditions heretofore made, and any other agreements not incorporated herein are void and of no force and effect.
". . .
 "The Purchaser [the Reeveses], herein, understands and agrees that he, or she, has entered into this contract without relying upon the accuracy of any representations regarding . . . the condition of the dwelling made the subject of this agreement and agrees that neither the Seller nor any real estate agents involved in this transaction have made any representations to him, or her, upon which he, or she, has relied. The Purchaser [the Reeveses] agrees that he, or she, had ample opportunity to . . . inspect said dwelling and has either done so or has elected not to do so."
The Reeveses initialed this last paragraph.
Ms. Grubis made no express warranty of habitability other than that the plumbing, wiring, and mechanical equipment would be in good working order when possession was given or when title passed, whichever occurred first.
After the contract was signed, the defendants arranged for an exterminating company to inspect the dwelling for termites or damage caused by termites or wood-destroying insect infestation. The termite report showed:
 "Visible damage due to water under both bathroom areas and to bottom of framing to both garage doors.
 "Will not be corrected by this company. Recommended that damage be evaluated by a qualified expert and that the needed repairs be made."
After receipt of this report, defendants called the Reeveses' sales broker, who suggested that the damage be checked by a particular contractor. That contractor repaired a minor leak (for $11.00), and stated that he did not see any serious problems. On May 2, 1985, at the closing, the termite report and the receipt for repairing the leak were shown to the Reeveses. Defendant Eldridge, the Reeveses, and the Reeveses' sales agent (Mrs. Brooks), attended *Page 967 
the sales closing. This is when the alleged representations were made.
Defendant Eldridge stated in her affidavit that she did not know of any defects in the dwelling other than those shown in the termite report and noted by the contractor after that report was made. She divulged this to the Reeveses' agent before the closing and to the Reeveses at the time of the closing.
It is clear that Ms. Eldridge had no personal knowledge of t`e water damage under the bathroom areas The only information she had on this came from the termite report. When she received this report, she contacted the Reeveses' sales broker and did what the Reeveses' broker told her to do — contact a particular contractor. That contractor found a leak, repaired it, and informed Ms. Eldridge that he saw no serious problems. Everything that was known by Ms. Eldridge was known by the Reeveses prior to closing the sale.
Fraud is defined in Code 1975, § 6-5-101:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
This Court has said:
 "Real estate brokers and salespersons should not be exempt from responsibility for statements and representations they make to induce a purchaser to act, when, under the circumstances, these amount to fraud in a legal sense. Real estate brokers and salespersons are subject to professional standards as established by § 34-27-31, Code 1975, and should use extreme caution and care in making statements and representations to their clients."
Earle, McMillan Niemeyer, Inc. v. Dekle, 418 So.2d 97, 100
(Ala. 1982).
Fraud in a legal sense is a misrepresentation of a material fact, i.e., one of such a nature that it would induce the injured party to take action, Speigner v. Howard, 502 So.2d 367
(Ala. 1987); Bay of Red Bay v. King, 482 So.2d 274 (Ala. 1985). Was the matter allegedly represented "material"? To determine this, we must first recognize that "[i]n the resale of used residential real estate, there is no implied warranty of habitability. The doctrine of caveat emptor still applies in this state in the sale of used residences." Cooper Co. v.Bryant, 440 So.2d 1016, 1019 (Ala. 1983); Sanders v. White,476 So.2d 84 (Ala. 1985); Ray v. Montgomery, 399 So.2d 230 (Ala. 1980). "A purchaser may protect himself by express agreement in the deed or contract of sale." Ray v. Montgomery, at 233.
The sales contract did not require Ms. Grubis to repair any part of the dwelling that was water damaged. The Reeveses are not claiming damages for the plumbing's not being in good condition at the time of the closing, but for structural damage caused by water. The Reeveses had a contractual obligation to purchase the dwelling even if the house had structural damage caused by water. When the Reeveses signed the sales agreement, they acknowledged that they had had ample opportunity to inspect the dwelling and that they either had done so or had elected not to do so. The Reeveses had a contractual obligation to purchase the dwelling for a certain sum even if there was structural damage to the dwelling. If they had not wanted to be so obligated, they could have provided for this in the contract. A representation in an arm's length transaction that causes a person to do nothing more than he was legally obligated to do without such a representation being made, is not material and therefore cannot constitute actionable fraud.Ladd v. Brown, 94 Mich. 136, 53 N.W. 1048 (1892); Western LandAss'n v. Banks, 80 Minn. 317, 83 N.W. 192 (1900).[2] In 37 Am.Jur.2d Fraud and Deceit, § 295, at 392-93 (1968), the following appears:
 "It is said to be immaterial that one is induced by false representations to *Page 968 do what he is bound to do. A person who has been induced to do that which the law would have otherwise required him to do cannot claim to have been defrauded. In other words, one suffers no damage where he is fraudulently induced to do something which he is under legal obligation to do, such as pay a just debt, pay delinquent taxes he has agreed to assume, execute a deed which he has contracted to execute, assume individual liability for a debt due from a solvent decedent's estate, of which he who assumes the debt is sole legatee, or perform a valid contract." (emphasis supplied)
Also, in 37 Am.Jur.2d Fraud and Deceit, § 283, at 379 (1968), it is written:
 "A person who is induced by false representations to do what his legal duty requires him to do cannot recover therefor, because he suffers no legal injury."
In Ladd v. Brown, 94 Mich. 136, 53 N.W. 1048, 1049 (1892), Justice Montgomery wrote:
 "In this case, if the defendant was induced to do no more than he had, before the alleged promises of plaintiff, undertaken upon sufficient consideration to do, it cannot be said that he was misled to his prejudice, and induced to do what he otherwise would not have done, unless it was to his prejudice to fulfill his contract, which is of course not true. 3 Amer. Eng. Enc. Law, p. 834, and cases cited in note 4."
In Western Land Ass'n v. Banks, 80 Minn. 317, 83 N.W. 192
(1900), the defendant had entered into a contract to purchase a lot from the plaintiff. Two months after the contract of purchase had been made, defendant called the agent of plaintiff, with whom she had negotiated the contract of purchase. Plaintiff's agent informed defendant that the line of the lot she had contracted to purchase would extend to the street, from which it was then separated by the width of a railroad right-of-way, as soon as the railroad track was removed. Defendant contended that she relied on this representation in completing the purchase of the lot she had previously contracted to purchase. Defendant went into possession of the former railroad right-of-way when it was reconveyed to plaintiff by the railroad. The plaintiff brought an action of ejectment. Defendant entered a plea of estoppel in pais. The Minnesota court wrote:
 "An estoppel in pais, in so far as applicable to this case, may be said to arise when one, by his conduct and representations, induces another to believe certain facts with reference to a transaction between them to exist, and such other person, having the right to do so, acts and relies thereon, and in the belief that such representations are true, and is thereby deceived, and to such an extent that to permit a denial of the truth of the facts so represented to exist would prejudice him. . . .
". . .
 "The evidence conclusively shows that defendant was in no way prejudiced by the representations, conceding that they were made. They were not made as a part of the transaction resulting in the contract of purchase. They were not made for two months thereafter. There can be no question but that such contract was valid, and obligatory upon both parties. It was in the usual form of such contracts, and signed, as required by statute, by the party making the sale, plaintiff herein. Plaintiff could have enforced the contract against her [a defendant], and she could have enforced it against plaintiff. The doctrine of estoppel has no application in cases where the representations which are claimed to give rise to it tend only to induce a party to do some act he is already legally bound to do. 11 Am. Eng. Enc. Law 439; Organ v. Stewart, 60 N.Y. 420; King v. Duluth, M. N. Ry. Co., 61 Minn. 482, 63 N.W. 1105; Gulf v. Gordon, 70 Tex. 80, 7 S.W. 695. And, as defendant was legally bound to complete the purchase of the lot under the terms of the contract, she was in no way prejudiced by the falsity of the representations, and no estoppel arises in her favor. Injury resulting from a reliance on the representations must be shown in all cases. Bigelow *Page 969 Estop. (5th Ed.) 644; East v. Dolihite, 72 N.C. 562."
80 Minn. at 320-22, 83 N.W. at 193-94.
To have an actionable misrepresentation claim, a plaintiff must show injury as a result of the alleged misrepresentation.Lowe v. American Medical Int'l, 494 So.2d 413, 415 (Ala. 1986). The alleged misrepresentations in the present case were not material, because the Reeveses were not, and could not have been, injured by reliance thereon, given the circumstances in which they were made.
The trial court did not err in granting the defendants' summary judgment on the count alleging fraud.
We are persuaded that Speigner v. Howard, supra, is authority for summary judgment on the Reeveses' count alleging suppression of material facts. 502 So.2d at 371-72. Under the facts disclosed, we must conclude that Ms. Eldridge concealed no material fact from the Reeveses. As previously noted, Ms. Eldridge stated in her affidavit that she did not know of any defects in the dwelling other than those shown in the termite report and noted by the contractor after that report was made. She also stated in her affidavit, "Furthermore, I did not withhold any information regarding any defects . . . which I knew about." There is nothing in the record to refute this.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.
MADDOX and BEATTY, JJ., concur specially.
JONES and ALMON, JJ., concur in the result.
[1] The former owner of the dwelling, who was alleged to have suppressed material facts, was dismissed with prejudice. The Reeveses' own real estate agent, sales broker, and real estate sales agency, who were alleged to have suppressed material facts and to have been negligent or wanton, were dismissed with prejudice pursuant to a stipulation of dismissal.
[2] This case was overruled by Schwinn v. Griffith,303 N.W.2d 258, 262 (Minn. 1981), to the extent that it implied that a vendor's signature, alone, on an otherwise complete memorandum of sale, was sufficient to satisfy Minnesota's Statute of Frauds.