In these consolidated appeals, the plaintiffs Jim Parr, Jean Parr, Paul Baker, Evangeline Baker, Joe P. Magee, and Phyllis Magee *Page 770 
(collectively "the Parrs") (case 1920723), and the Solid Waste Authority of Etowah County ("SWA") (case 1920724), appeal from a summary judgment entered in favor of the defendant, Goodyear Tire and Rubber Company ("Goodyear").
At issue here is: 1) whether the trial court erred in entering a summary judgment before the Parrs obtained, through discovery, information they say was crucial in opposing Goodyear's motion for summary judgment, and; 2) whether the trial court erred in entering a summary judgment in favor of Goodyear on SWA's claims, given the procedural posture of this case.
The underlying facts of this case are lengthy. In the interest of brevity, we state only those facts reasonably necessary for an understanding of our discussion of the issues involved.
The Parrs own real property and live near the Etowah County landfill. Goodyear manufactures rubber tires for motor vehicles at a plant in Gadsden that is served by the Etowah County landfill. The SWA oversees operations at the Etowah County landfill.
In 1990, the Parrs sued the SWA and Goodyear on theories of negligence, negligence per se, intentional infliction of emotional distress, fraud, and trespass. They claimed damages based on a devaluation of their property, physical impairment, and emotional and mental distress, all related to toxic or harmful materials dumped at the landfill.[1]
The trial court entered a consent judgment in favor of the Parrs against the SWA. Asserting various fraud theories, the SWA then sued Goodyear for punitive and compensatory damages, based on an alleged devaluation of its leasehold interest in the landfill property, clean-up costs, and the SWA's expenses resulting from its legal liability to others based on conditions at the landfill, e.g., the judgment for the Parrs.
Both the Parrs and the SWA contend that Goodyear has improperly disposed of hazardous waste at the landfill or has improperly packaged harmful waste for disposal, resulting, they say, in migration of the waste and contamination of the landfill and nearby property. As to the Parrs' claims against the SWA, Goodyear states that the Parrs "produced ample evidence that various kinds of trash and rainwater run-off had escaped from the Etowah County Landfill and gotten onto [the Parrs'] property."
Identified at both the landfill and the Parrs' property are substances that can be classified as hazardous waste or as potentially harmful waste. Goodyear concedes that it uses or generates some of the substances in question, but disputes that it disposed of these substances at the landfill in forms that would constitute "hazardous waste" at the landfill, and it says generally that, regardless of whatever hazardous or nonhazardous materials may have been improperly disposed of at the landfill, the plaintiffs have not shown Goodyear to be the source of those materials.
The first issue we address is whether the trial court erred in entering the summary judgment as to the SWA's claims.
Goodyear made its summary judgment motion in October 1992. At that time, the SWA was not a plaintiff. After Goodyear made its motion and before the trial court disposed of it, the SWA became a plaintiff, but Goodyear did not move for a summary judgment against the SWA. However, when the trial court disposed of Goodyear's summary judgment motion, it ruled in favor of Goodyear as to all plaintiffs, including the SWA.
On appeal, Goodyear suggests that the SWA's claims were purely derivative of the Parrs' claims, and that, therefore, if the *Page 771 
Parrs' claims fail, the SWA's necessarily fail also. We disagree. Only one of the SWA's claims is potentially derivative, that claim being the SWA's claim for damages related to its expenses resulting from civil liability to third parties caused by Goodyear's alleged wrongdoing. However, even if this claim was derivative, it would not render harmless the trial court's action in effectively dismissing, with prejudice,all of the SWA's claims. Further, as we will discuss, the trial court erred in entering a judgment in favor of Goodyear as tothe Parrs' claims. Accordingly, even if the SWA's claims were derivative of the Parrs' in toto, the judgment as to the SWA would still be error.
Holding, as we do, that the trial court erred in entering the judgment against the SWA on Goodyear's motion for summary judgment as to the Parrs' claims, we now turn to the propriety of its judgment as to the Parrs.
At the outset of this case, the Parrs filed discovery requests. Goodyear did not produce the requested information, and the Parrs moved to compel production. In response, the trial court limited the information it would compel Goodyear to produce. However, the trial court in January 1992 lifted its order limiting discovery. Goodyear did not respond by producing the information originally requested, and as stated, in October 1992 moved for a summary judgment. Again, the Parrs moved to compel production of the information requested at the outset of the case. Shortly after the Parrs made their motion to compel, the trial court entered a summary judgment in favor of Goodyear, over the Parrs' contention that they could not adequately respond to Goodyear's summary judgment motion in the absence of the requested discovery. The Parrs claim that this contention was in the form of a Rule 56(f), Ala.R.Civ.P., motion; Goodyear does not dispute that claim. Rule 56(f) provides a method for a nonmoving party to meet its burden of showing that unproduced discovery information is "crucial."Hope v. Brannan, 557 So.2d 1208, 1212 (Ala. 1989).[2] Rule 56(f) provides:
 "If a party opposing the [summary judgment] motion shows by affidavit that he or she cannot, for reasons stated in the affidavit, present facts essential to justify a statement in opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
The Parrs correctly state that if it can be ascertained that the information sought by pending interrogatories and requests for production of documents is crucial to the nonmoving party's case, it is error to enter a summary judgment before the party moving for summary judgment has produced the documents and answers to the interrogatories. See Reeves v. Porter,521 So.2d 963 (Ala. 1988). Conversely, "[i]f no crucial evidence would be supplied by the discovery, it is not error for the trial court to enter summary judgment with discovery pending." Hope, 557 So.2d at 1213.
Accordingly, we now turn to the basis of Goodyear's summary judgment motion, and to the proof that the Parrs would have had to produce in rebuttal of it, in order to determine whether the unproduced discovery information was crucial. Specifically, we turn to matters related to proof on the Parrs' claim that Goodyear illegally dumped hazardous waste at the landfill and thereby committed negligence per se.
In its order on Goodyear's summary judgment motion, the trial court stated: "The essence of the Goodyear motion for summary judgment is that the materials they have sent to the Etowah County landfill are not 'hazardous materials' within the meaning of the federal regulations." It was and is Goodyear's position that there is no evidence that it dumped at the landfill what could be legally classified as "hazardous waste."[3] *Page 772 
As to the Parrs' negligence per se/"hazardous waste" claim, we note that a significant portion of the requested discovery was directed toward evidence related to whether Goodyear disposed of substances at the landfill that were hazardous waste at the time of disposal. For example, the interrogatories included a request for a statement of materials used in manufacturing and a statement of the by-products of Goodyear's manufacturing process, as well as a statement of any hazardous materials (as defined in United States Environmental Protection Agency regulations) generated in production, or in processes ancillary to production, and the nature and amounts of such materials generated. The Parrs also questioned what waste Goodyear had disposed of at the landfill after January 1980, and, specifically, whether it used solvents, acids, or heavy metals in processes ancillary to the production process. The Parrs sought production of "any and all records which reflect the source, nature and amounts of all industrial wastes disposed [of by Goodyear] at the . . . landfill" after January 1980.
Clearly, the discovery we have discussed was "crucial" to the Parrs' attempts to show what Goodyear had disposed of at the landfill and in what amounts. Accordingly, we hold that the trial court erred in entering the summary judgment before the crucial materials were produced.
Finally, we observe that because, in regard to its summary judgment motion, Goodyear limited its contentions to matters of negligence per se, i.e., matters regarding the claim that it had illegally disposed of hazardous waste, the trial court erred in entering the judgment as to all of the Parrs' claims. The Parrs' claims as to negligence, nuisance, intentional infliction of emotional distress, fraud, and trespass were not before the trial court on the motion for summary judgment.
1920723 — REVERSED AND REMANDED.
1920724 — REVERSED AND REMANDED.
MADDOX, ALMON, SHORES, STEAGALL, INGRAM and COOK, JJ., concur.
HOUSTON, J., concurs in the result.
[1] The Bakers and Jim and Jean Parr raise livestock on their property. Between 1984 and 1989 more than 25 of the Bakers' cattle died from a suspected but unidentified poisoning. In the spring of 1990 some of Jim and Jean Parr's cattle died, and approximately 31 trees have died on their property. Over time, the Bakers' pond, they say, has become "nearly black," and Jean Parr testified that black run-off washes onto her property, Jean Parr also testified that she has observed chunks of "raw rubber" on her property and has seen pockets of carbon black in a creek on her land. Joe Magee testified that dust from the landfill blows over his property, making everything black.
[2] For a discussion of the situation where the nonmoving party did not comply with Rule 56(f), see Noble v. McManus,504 So.2d 248 (Ala. 1987).
[3] Goodyear argues that the concentration of hazardous substances the plaintiffs claim to have discovered at the landfill was too low to legally qualify as hazardous. However, and as Goodyear suggested in the trial court, the dispositive question is whether Goodyear disposed of substances that were deemed "hazardous waste" at the time of disposal. The Parrs' claims as to the "hazardous waste" question are premised on the allegation that Goodyear illegally disposed of waste that was "hazardous waste" as the time of the disposal.
We observe also that in United States v. Dee, 912 F.2d 741,748 n. 17 (4th Cir. 1990), cert. denied, 499 U.S. 919,111 S.Ct. 1307, 113 L.Ed.2d 242 (1991), the court, addressing the dispositive time frame as a matter of environmental law, stated that "the concentration of the wastes after disposal has no bearing on whether the disposal was illegal."