On Application for Rehearing
The opinion of this court issued on December 12, 2003, is withdrawn, and the following is substituted therefor.
On October 14, 1999, Willie McGhee lost his right arm and hand in an industrial accident that occurred while he was processing rubber through a "re-op mill" at the business premises of his employer, Uniroyal/B.F. Goodrich/Michelin North America ("Michelin"). In July 2001, after having conducted presuit discovery pursuant to Rule 27(a), Ala. R. Civ. P., in February 2000, McGhee sued the manufacturer of the "re-op mill," alleging violations of the Alabama Extended Manufacturer's Liability Doctrine, and Ed Martin, Bruce Brackett, Russell Vaughn, Paul Cagle, and Wilton Crawford (hereinafter collectively referred to as "the co-employees"), alleging that they had willfully and intentionally removed from the mill a safety device that McGhee had been working with at the time of his accident. McGhee also sued 27 fictitiously named parties pursuant to Rule 9(h), Ala. R. Civ. P.
On February 11, 2002, the trial court entered a scheduling order. That order set the case for trial during the first civil jury week of 2003; set the case for final pretrial conference on December 9, 2002; and set cutoff dates for the designation of *Page 400 
experts, the exchange of witness lists, the filing of summary-judgment motions, and discovery. The order also stated that "[a]ll amendments including the adding of parties shall be filed within 90 days of this order." Thus, pursuant to the scheduling order, no new parties could be added after May 13, 2002.[1]
McGhee began taking depositions of the co-employees in June 2002. Two of the co-employees, Martin and Vaughn, were deposed on September 10, 2002. At Martin's deposition, Martin was unable to provide the name of the head of maintenance at Michelin at the time of the accident. McGhee propounded interrogatories to Martin, requesting the name of the head of maintenance, on October 16, 2002; Martin supplied the name "John Guest" in response. On November 12, 2002, McGhee filed a "Motion to Substitute Fictitious Parties," in which he requested that he be allowed to substitute Guest and three additional co-employees — Donald Williams, Curtis Coker, and Harold Chavis — for fictitiously named party number one, who is described in the complaint as "the person or persons who were employees . . . of [McGhee's] employer who had been delegated responsibility by their employer to provide [McGhee] with a safe place to work or a reasonably safe work environment." The co-employees filed a response in opposition to McGhee's motion, arguing that the deadline for adding new parties had passed six months before the filing of the motion to substitute; that McGhee had failed to demonstrate due diligence in determining the true identity of the fictitiously named parties as required by Rule 9(h); and that McGhee could not substitute four additional defendants for one fictitiously named party. After a hearing on February 21, 2003, the trial court denied McGhee's motion on February 25, 2003.
The co-employees filed a motion for a summary judgment on January 21, 2003; that motion was set for a hearing on February 21, 2003. In response to the summary-judgment motion, McGhee filed a request, pursuant to Rule 56(f), Ala. R. Civ. P., that the trial court continue the hearing on the summary-judgment motion and permit additional time for further discovery. The co-employees opposed McGhee's request. The trial court denied the continuance and, because McGhee had failed to produce any evidence indicating an issue of material fact as to the liability of the co-employees, entered a summary judgment in favor of the co-employees on February 25. At the request of the co-employees, the trial court made that summary judgment final.
On March 10, 2003, McGhee filed a postjudgment motion requesting that the trial court reconsider its entry of the summary judgment in favor of the co-employees and its denial of his "Motion to Substitute Fictitious Parties." The trial court did not expressly rule on that motion.[2] McGhee and the manufacturer of the "re-op" mill filed a joint stipulation for dismissal on March 27, 2003; the trial court entered an order dismissing the case on March 31, 2003. On April 8, 2003, McGhee filed a notice of appeal to the Alabama Supreme Court, which transferred the case to this court, pursuant to Ala. Code 1975, §12-2-7(6); *Page 401 
the notice of appeal listed the February 25, 2003, summary judgment as the judgment from which McGhee appealed. In his docketing statement, which was filed on the same date as his notice of appeal, McGhee listed as issues on appeal the propriety of both the trial court's entry of a summary judgment when discovery remained pending and the trial court's denial of his "Motion to Substitute Fictitious Parties."
 I. The Denial of the Rule 56(f) Continuance
McGhee's response to the co-employees' motion for a summary judgment was to file a motion for a continuance, pursuant to Rule 56(f), Ala. R. Civ. P., in which he alleged that he was unable to respond to the co-employees' summary-judgment motion with evidentiary materials because he had not yet completed essential discovery.
 "Although the pendency of discovery does not alone bar a summary judgment, see Reeves v. Porter, 521 So.2d 963, 965 (Ala. 1988), and Hope v. Brannan, 557 So.2d 1208, 1212 (Ala. 1989), if the nonmoving party can demonstrate that the outstanding discovery is crucial to his case, then it is error for the trial court to enter a summary judgment before the discovery has been completed. Reeves, 521 So.2d at 965; Hope, 557 So.2d at 1212. To show that the discovery sought is crucial to his case, the nonmoving party should comply with Rule 56(f), which provides:
 "`Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.'"
Wright v. State, 757 So.2d 457, 459 (Ala.Civ.App. 2000).
McGhee argues that his Rule 56(f) motion and his affidavit in support of the motion, which were accompanied by "voluminous filings" regarding outstanding discovery, were sufficient under Rule 56(f) to warrant a continuance of the hearing on the co-employees' summary-judgment motion. He bases his argument on several statements from cases that have considered whether the denial of a Rule 56(f) continuance constitutes reversible error; the statements McGhee relies on include the following: "At this point, neither the trial court nor this Court knows if [the summary-judgment movant's] compliance with those discovery devices will yield anything by way of a cognizable defense to [the movant's] claim," Water View Devs., Inc. v. Eureka, Inc.,512 So.2d 916, 918 (Ala. 1987), and "[the party opposing the motion for a summary judgment] had the right to have full answers to such interrogatories before the trial court ruled on the motions for summary judgment," Noble v. McManus, 504 So.2d 248,250 (Ala. 1987). Particularly, McGhee argues that he had filed requests for production that Michelin had not responded to and that he had subpoenaed two witnesses for deposition; he argues that the fact that those discovery requests were pending at the time the trial court entered its summary judgment requires this court to reverse the trial court's summary judgment. He also states that a summary judgment is premature and thus should be reversed when, at the time the summary judgment is entered, the trial court is able to ascertain that any outstanding discovery "is or may be crucial to the non-moving party's case." Reevesv. Porter, 521 So.2d 963, 965 (Ala. 1988) (emphasis added). *Page 402 
The phrase quoted above from Reeves, however, is contained in a sentence that reads, in its entirety, as follows: "The burden is upon the non-moving party to comply with Rule 56(f) or to prove that the matter sought by discovery is or may be crucial to the non-moving party's case." Reeves, 521 So.2d at 965. However, Reeves also states that "the evidence before the court [must] clearly show that the evidence sought is crucial to the non-moving party's case," id., thus indicating a more stringent burden on the party opposing summary judgment than merely showing that the outstanding discovery "may be" crucial. The inconsistency in the statements in Reeves concerning the burden on a party opposing summary judgment who is requesting a Rule 56(f) continuance is not the only inconsistency in the cases interpreting the application of Rule 56(f), however.
In fact, while reviewing the cases cited by McGhee and conducting independent research on this issue, we discovered a pattern of inconsistent statements concerning the burden placed on the party seeking a Rule 56(f) continuance. In some cases, for example, a party seeking a Rule 56(f) continuance was required to explain specifically what items of outstanding discovery were crucial and why that discovery was essential to aid that party in formulating a response to the pending summary-judgment motion.See Stallworth v. AmSouth Bank of Alabama, 709 So.2d 458, 469
(Ala. 1997) ("[The Rule 56(f) movant's] conclusory affidavit fails to even identify what crucial evidence pertaining to his squeeze-out claim discovery might disclose."); McCullar v.Universal Underwriters Life Ins. Co., 687 So.2d 156, 161 (Ala. 1996) ("[The Rule 56(f) movant] has not met her burden of proving how [the outstanding discovery] is crucial to her case. . . . [N]othing in the record indicates that she specifically told the court why the discovery was significant to her effort to rebut the summary judgment motion. [The Rule 56(f) movant] has not explained to this Court why her discovery requests were so important that the trial court should have delayed the hearing on the summary judgment motion."); and Lightfoot v. McDonald,587 So.2d 936, 938 (Ala. 1991) ("However, [the Rule 56(f) movant's] affidavit does not demonstrate that the rape kit contains crucial evidence or any evidence that would support his claim against [the party moving for a summary judgment]."). Other cases have taken a more liberal approach concerning the burden under Rule 56(f), apparently considering, upon a review of the record, whether the outstanding discovery was in fact crucial to the case of the party seeking a continuance even though that party had not expressly explained in a Rule 56(f) affidavit what outstanding discovery remained or why the outstanding discovery was crucial to that party in formulating a response to the pending summary-judgment motion. See Parr v. Goodyear Tire RubberCo., 641 So.2d 769, 771 (Ala. 1994) (stating that the parties opposing summary judgment had contended that they could not adequately respond to the summary-judgment motion without further discovery, but not indicating whether they had presented a Rule 56(f) affidavit or what it may have stated, and reviewing the discovery requests propounded by the parties opposing summary judgment "in order to determine whether the unproduced discovery information was crucial"); see also Carrell v. Masonite Corp.,775 So.2d 121, 122 — 23 (Ala. 2000) (stating that the party opposing summary judgment had requested more time to depose the moving party's corporate officers without indicating that the Rule 56(f) affidavit stated a reason why the testimony of those witnesses was crucial to the case, but stating that the *Page 403 
party opposing summary judgment had alleged, apparently on appeal, that discovery would prove certain issues regarding the corporation's behavior with regard to its allegedly defective product). The Alabama cases that address this issue contain certain statements, like the one quoted above from Reeves
(i.e., "The burden is upon the non-moving party to comply with Rule 56(f) or to prove that the matter sought by discovery is or may be crucial to the non-moving party's case." Reeves,521 So.2d at 965), placing the burden of proving that outstanding discovery is crucial on the party seeking the Rule 56(f) continuance; however, those cases also contain other statements, sometimes appearing in the same case or even in the same paragraph in the case, that require the court, either the trial court or the appellate court, to review the record to "ascertain [whether] the matter subject to production [is] crucial to the [non-moving party's] case," Reeves,521 So.2d at 965 (emphasis added), thus indicating, perhaps, that the burden on the party seeking the Rule 56(f) continuance is merely to generally allege that the outstanding discovery is crucial and that the court's duty is to independently review the evidence or the record to determine if any of the facts expected to be elicited by the outstanding discovery are truly crucial.
The earlier Alabama cases addressing this issue, such asNoble and Reeves, quote from federal cases interpreting Rule56(f), Fed.R.Civ.P., which is nearly identical to our state rule. Specifically, our supreme court has referred to and quoted fromParrish v. Board of Commissioners of the Alabama State Bar,533 F.2d 942 (5th Cir. 1976), and Wallace v. Brownell Pontiac-GMCCo., 703 F.2d 525 (11th Cir. 1983). An analysis and comparison of those cases is an excellent starting point at which to embark on a journey toward understanding the burden imposed by Rule 56(f).
Parrish involved a suit alleging racially discriminatory grading practices by the Alabama State Bar. Parrish,533 F.2d at 944. The plaintiffs sought additional time for discovery and moved to compel production of the bar examination papers with grading notes before responding to a pending summary-judgment motion after the State Bar refused to produce the requested items. Id. at 946-47. The federal district court denied the requested continuance and entered a summary judgment in favor of the State Bar. Id. The United States Court of Appeals for the Fifth Circuit reversed the summary judgment, concluding, based upon the assertion by the plaintiffs that "an analysis of the answer sheets would demonstrate whether or not substantially identical answers were graded discriminatorily on the basis of race," that the State Bar should have been compelled to produce the bar examination papers before the district court ruled on the summary-judgment motion. Id. at 947. The Fifth Circuit Court of Appeals concluded its discussion by noting that "the whole purpose of discovery in a case in which a motion for summary judgment is filed is to give the opposing party an opportunity to discover as many facts as are available and he considers essential to enable him to determine whether he can honestly file opposing affidavits." Id. at 948.
In Wallace, the plaintiffs sought a continuance and moved to compel certain discovery before the federal district court ruled on a pending summary-judgment motion. Wallace, 703 F.2d at 526. The United States Court of Appeals for the Eleventh Circuit considered the plaintiffs' motion to compel, their motion to strike an affidavit filed in support of the summary-judgment motion, and their response to the summary-judgment motion as a Rule 56(f) motion, noting that the district court *Page 404 
had not been compelled to do so. Id. In its discussion of Rule 56(f), the Eleventh Circuit Court of Appeals stated the following:
 "A party seeking the shelter of rule 56(f) must offer an affidavit explaining to the court why he is unable to make a substantive response [to the summary-judgment motion] as is required by subsection (e). As the Fifth Circuit noted in SEC v. Spence Green Chemical Co., 612 F.2d 896 (1980), cert. denied, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806
(1981), the nonmovant `may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts,' but rather he must specifically demonstrate `"how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."' Id. at 901 (quoting Willmar Poultry Co. v. Morton-Norwich Products, Inc., 520 F.2d 289, 297 (8th Cir. 1975), cert. denied, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976))."
Wallace, 703 F.2d at 527 (footnotes omitted).
The Wallace court distinguished Parrish, noting that inParrish"[a]ccess to [the bar examination papers] was crucial to the plaintiffs' case." Id. at 528. The plaintiffs in Wallace
failed to convince the Eleventh Circuit Court of Appeals that the discovery they sought was critical to formulating a response to the summary-judgment motion. Id. The court commented that most summary-judgment cases were factually dissimilar and thatParrish did not provide a blanket rule that a summary judgment could not be entered if discovery was not yet completed. Id.
Our supreme court, in Noble, cited Parrish and Wallace in its discussion of whether the outstanding discovery in Noble
was crucial to Noble's case. In Parrish the plaintiffs needed access to the bar examination papers to compare them as a way to prove, if possible, that the papers were graded discriminatorily on the basis of race. In Noble the outstanding discovery was a request for more specific answers to interrogatories inquiring of the defendant co-employees their specific job duties. Noble,504 So.2d at 249. The Noble court concluded, as the Fifth Circuit Court of Appeals had concluded in Parrish, that the outstanding discovery was crucial to Noble's case. Id. at 250. The court based its determination on its finding that Noble needed the job descriptions of his co-employees to determine if any of those co-employees had a duty to ensure a safe place to work; if one did, the court reasoned, that co-employee, under the law in effect at the time of Noble's injury, might be liable to Noble. Id. In explaining its conclusion that, despite Noble's failure to file a Rule 56(f) affidavit, a reversal of the summary judgment was warranted, the supreme court stated:
 "It would have been prudent for Noble to have filed such an affidavit, because a trial court is not required to treat a motion to compel as satisfying the requirements of [Rule 56(f)]. Wallace v. Brownell Pontiac-GMC Co., 703 F.2d 525 (11th Cir. 1983) (Fed.R.Civ.P., 56(f) is identical to Rule 56(f), Ala. R. Civ. P.). Judge Kravitch distinguished Wallace from Parrish v. Board of Comm'rs of Alabama State Bar, 533 F.2d 942 (5th Cir. 1976). In Parrish, a motion to compel the State Bar to furnish bar examination papers in a dispute involving allegations of discriminatory grading of bar examination papers was pending when summary judgment was granted to the State Bar. The Fifth Circuit held that it was error to grant summary judgment without first requiring *Page 405 
production of the test papers, since these papers were crucial to Parrish's case. In Wallace no such critical evidence was missing, and Judge Kravitch noted: `Most, if not all, cases involving a rule 56(f) issue will be factually dissimilar. For this very reason, a blanket rule would be inappropriate.' 703 F.2d at 528."
Noble, 504 So.2d at 250. As our supreme court recognized, the situations presented in both Parrish and Noble are not typical of all cases in which a summary-judgment motion is pending. Seldom is the discovery outstanding so clearly crucial to the formulation of a response to a summary-judgment motion.
So, then, what is the burden on the party seeking a Rule 56(f) continuance? Does it vary depending on the facts of the case presented? If the outstanding discovery is clearly crucial, as it was in Parrish, for example, may the appellate court simply "ascertain" that it is and reverse the judgment even if the party seeking the continuance failed to explain his need for the discovery? Does it depend on the age of the case and the history of discovery? Some federal cases have, in fact, permitted consideration of whether "ample time and opportunities for discovery have already lapsed." SEC v. Spence Green Chem.Co., 612 F.2d 896, 901 (5th Cir. 1980); see also Kozikowski v.Toll Bros., Inc., 354 F.3d 16, 26 (1st Cir. 2003) (stating that a court may grant a Rule 56(f) continuance if the party seeking the continuance "demonstrates that it was diligent in pursuing discovery before summary judgment surfaced"); AviationSpecialties, Inc. v. United Technologies Corp., 568 F.2d 1186,1190 (5th Cir. 1978) (stating that the "[p]laintiff must bear the consequences of its decision to proceed with discovery piecemeal" and holding that the district court did not abuse its discretion in failing to grant a continuance when the plaintiff had not initiated any discovery until his action had been on file for six months and after a pretrial conference had been conducted).
In those cases in which the outstanding discovery is not clearly connected to the central issue in the case, the comment in Noble would appear to be an appropriate warning — it would be prudent for the party seeking the continuance to file a Rule 56(f) affidavit. In addition, it would be prudent for the party moving for the continuance to be certain that the affidavit contained more than vague assertions that more discovery is needed. Our supreme court has indicated that it requires something more than a conclusory affidavit in the typical Rule 56(f) case. See, e.g., Stallworth, 709 So.2d at 469 ("[The Rule 56(f) movant's] conclusory affidavit fails even to identify what crucial evidence pertaining to his . . . claim discovery might disclose.").
This court has examined a Rule 56(f) affidavit under the more stringent standard set out above, that is, the standard requiring the party seeking the continuance to explain what discovery was necessary and, in general, why it was necessary. Wright,757 So.2d at 459-60. The affidavit filed by the plaintiff inmate inWright"stat[ed] . . . that he required certain items of evidence that he had requested but had not yet received from the State. He specifically enumerated several items of evidence he had requested in his motion for production of evidence."Wright, 757 So.2d at 459. The plaintiff inmate in Wright also indicated the reason he needed the evidence to respond to the summary-judgment motion. Id. In Wright, this court found the plaintiff inmate's Rule 56(f) affidavit to be sufficient under the rule to reverse the trial court's denial of the requested continuance and its entry of *Page 406 
a summary judgment on a particular issue for the defendants.Id. at 459-60.
In an attempt to comply with the requirements of Rule 56(f), McGhee's attorney filed an affidavit with his Rule 56(f) motion. That affidavit states that "persistent and diligent efforts have been made to conduct both depositions and written discovery, but . . . despite such efforts [McGhee] has been unable to conclude discovery essential to oppose the motion for summary judgment." McGhee attached to his motion and affidavit correspondence concerning his attempts to schedule the depositions of two nonparties and his requests to Michelin for the production of documents. McGhee's motion offers neither an indication of what McGhee believed he would learn from the outstanding discovery nor an explanation of why the outstanding discovery was so essential to his case that he could not respond to the pending summary-judgment motion without it. We also note that discovery progressed as follows: McGhee initiated presuit discovery in this case in February 2000, filed suit in July 2001, took the first deposition of a named defendant in the case in June 2002, requested the above-mentioned depositions of nonparties in December 2002, and filed the requests for production in January 2003.
The affidavit of McGhee's counsel is much more similar to the affidavit in Stallworth than the affidavit in Wright. InStallworth, the Rule 56(f) movant's affidavit asserted that "`[d]iscovery is necessary to develop facts relating to unlawful efforts by [the defendants].'" Stallworth, 709 So.2d at 469. The supreme court characterized this affidavit as conclusory, stating that it "fails even to identify what crucial evidence pertaining to [the nonmovant's] claim discovery might disclose."Id. The affidavit signed by McGhee's counsel, though supported by numerous exhibits indicating that he had repeatedly requested depositions and had filed requests for production of several items, is just as conclusory, stating that McGhee has been unable to conclude "essential" discovery, "which is necessary for [McGhee] to be in the position to respond to the pending summary judgment motion." Such "vague assertions" that outstanding discovery will somehow provide unspecified facts to rebut the summary-judgment movant's showing of a lack of a genuine issue of material fact, especially in light of the length of time during which discovery had been conducted in this case, are insufficient under Rule 56(f) as that rule has been construed by the federal courts and the Alabama Supreme Court.
Under the more stringent standard set out in Wallace,703 F.2d at 527; Stallworth, 709 So.2d at 469; McCullar,687 So.2d at 161; Lightfoot, 587 So.2d at 938; and Wright,757 So.2d at 459-60, we conclude that the affidavit filed by McGhee's counsel is not sufficient to comply with the requirements of Rule 56(f). In addition, the lengthy discovery period and McGhee's apparent delay in moving ahead with the case mitigates against allowing a continuance. Kozikowski, 354 F.3d at 26; Spence Green Chem. Co., 612 F.2d at 901; and Aviation Specialties,Inc., 568 F.2d at 1190. Therefore, we conclude that the trial court properly denied the requested continuance, and, because McGhee does not make any argument concerning the correctness of the summary judgment on the merits, we affirm the summary judgment for the co-employees.
 II. The Denial of the "Motion to Substitute Fictitious Parties"
McGhee also argues that the trial court erred by failing to allow him to substitute John Guest, Donald Williams, Curtis Coker, and Harold Chavis for fictitiously named party number one as described in *Page 407 
his complaint. The co-employees challenged the requested substitution on three grounds — that the attempt to substitute came well after the deadline for adding parties as set out in the trial court's scheduling order, that the attempt to substitute four new parties for one fictitiously named party was improper, and that McGhee had failed to meet the due-diligence requirement of Rule 9(h). On appeal, the co-employees also raise a question concerning our jurisdiction to consider this issue.
 A. Our Jurisdiction over the Substitution Issue
The co-employees argue that this court does not have jurisdiction over the issue whether the trial court erred when it denied McGhee's "Motion to Substitute Fictitious Parties." Because McGhee's notice of appeal designates the February 25, 2003, summary judgment as the judgment from which he appeals and does not indicate that he is also appealing from the March 31, 2003, judgment dismissing the remaining claims against the manufacturer and, thus, rendering the denial of his "Motion to Substitute Fictitious Parties" final, the co-employees are technically correct. However, the Rules of Appellate Procedure "shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits." Rule 1, Ala. R.App. P. In addition, our supreme court has stated that "[n]othing in the rules is designed to catch the unwary on technicalities." Edmondson v. Blakey, 341 So.2d 481,484 (Ala. 1976).
Rule 3(c), Ala. R.App. P., requires an appellant to "designate the judgment, order or part thereof appealed from." To determine whether an appellant has complied with this rule, we must decide "whether the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice [of appeal]."Edmondson, 341 So.2d at 483. As noted above, the notice of appeal in this case indicates that McGhee is appealing from the February 25, 2003, summary judgment in favor of the co-employees. However, in the docketing statement filed with his notice of appeal, McGhee indicates that one of his issues on appeal relates to the denial of his "Motion to Substitute Fictitious Parties." Because the "designation of judgment or order shall not . . . limit the scope of appellate review," Rule 3(c), and because the only jurisdictional act is the timely filing of a notice of appeal, Rule 3, Committee Comments, we will consider the merits of McGhee's appeal of the denial of his "Motion to Substitute Fictitious Parties."
 B. The Merits of the Substitution Issue
The parties disagree over the standard of review of the denial of McGhee's "Motion to Substitute Fictitious Parties." McGhee argues that this court must conduct a de novo review because, he argues, the denial of his motion is equivalent to the grant of a summary-judgment motion filed by a substituted party on the basis that the party making the substitution did not use due diligence in identifying the substituted party. He cites several cases in which either an appeal was taken from a summary judgment in favor of a party who had been substituted for a fictitiously named party or a petition for a writ of mandamus was filed by a substituted party seeking to direct the trial court to grant its motion for summary judgment. Crowl v. Kayo Oil Co.,848 So.2d 930 (Ala. 2002) (appeal of summary judgment in favor of substituted party); Ex parte Stover, 663 So.2d 948 (Ala. 1995) (writ of mandamus); and Ex parte FMC Corp., 599 So.2d 592 (Ala. 1992) (writ of mandamus). Naturally, those cases involved application of the standard applicable to summary judgments. However, unlike the situation presented *Page 408 
in those cases, this case does not involve an appeal from a summary judgment in favor of Guest, Williams, Coker, and Chavis or a petition for a writ of mandamus directing the trial court to enter a summary judgment in their favor. Instead, McGhee is appealing the trial court's refusal to permit him to amend his complaint by substituting Guest, Williams, Coker, and Chavis for fictitiously named party number one. At issue, then, as the co-employees correctly point out, is whether the trial court abused its discretion by refusing to permit McGhee to substitute Guest, Williams, Coker, and Chavis for fictitiously named party number one. See Rector v. Better Houses, Inc., 820 So.2d 75, 78
(Ala. 2001) ("`[T]his Court has held consistently that "the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion."'") (quoting Boros v.Baxley, 621 So.2d 240, 245 (Ala. 1993)); Modern Woodmen ofAmerica v. McElroy, 815 So.2d 520, 525 (Ala. 2001) (same).
The trial court's scheduling order set May 13, 2002, as the last date for all amendments, including those adding new parties. McGhee's "Motion to Substitute Fictitious Parties" was filed on November 12, 2002, six months after that date. The trial court denied the motion after a hearing at which the co-employees argued that McGhee had engaged in presuit discovery in February 2000 and that Michelin had produced the maintenance records on the mill on which McGhee was injured in April 2000; that McGhee had waited nearly one year after filing suit before taking the co-employees' depositions; that, before a September 2002 deposition, McGhee had never asked in any discovery who the head of maintenance at Michelin was, despite his having had the maintenance records in his possession for more than two years; that the accident had occurred in October 1999; and that the statute of limitations had expired in October 2001, before McGhee had taken the first deposition of any of the co-employees. Thus, the co-employees argue that the trial court did not abuse its discretion when it denied McGhee's "Motion to Substitute Fictitious Parties."
 1. Analysis of the Refusal of the Proffered Amendment Under Rule 15(a), Ala. R. Civ. P.
Our supreme court recently considered the limits on a trial court's discretion to disallow an amendment under Rule 15(a), Ala. R. Civ. P. Ex parte Liberty Nat'l Life Ins. Co.,858 So.2d 950 (Ala. 2003).
 "Rule 15(a), Ala. R. Civ. P., reflects Alabama's liberal policy in favor of allowing amendments to pleadings:
 "`Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause. A party shall plead in response to an amended pleading within the time remaining for a response to the original pleading or within ten (10) days after service of the amended pleading, whichever period may be longer, unless the court orders otherwise.'
"However, the extent of the trial court's discretion in permitting amendments has not been precisely delineated and has been, at times, unclear.
"We noted in Ex parte GRE Insurance Group, 822 So.2d 388, 390
(Ala. 2001), that under Rule 15 amendments *Page 409 
to pleadings are to be `freely allowed' unless there exists some valid reason to deny them, such as `actual prejudice or undue delay':
 "`"`[R]efusal of an amendment must be based on a valid ground,'" Ex parte Bailey, 814 So.2d 867, 869
(Ala. 2001) (quoting Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471
(1975)) (emphasis omitted), such as "actual prejudice or undue delay." Ex parte Thomas, 628 So.2d 483, 486 (Ala. 1993).'
"However, as evidenced by the placement of the phrase `freely allowed' in the text of Rule 15, that phrase applies only to those amendments sought `more than forty-two (42) days before the first setting of the case for trial.' Rule 15, Ala. R. Civ. P. In that situation, a trial court has no discretion; it can deny a requested amendment only if there exists a `valid ground' for the denial, such as `actual prejudice or undue delay.' Ex parte GREIns. Group, 822 So.2d at 390. In other words, the burden is on the trial court to state a valid ground for its denial of a requested amendment.
"When, as here, the amendment is sought within the 42-day window, the trial court is free to deny a party leave to amend his or her pleading unless the party can demonstrate `good cause.' Rule 15, Ala. R. Civ. P. The language of Rule 15 makes clear that upon a showing of `good cause' a trial court is notrequired to allow the amendment; after such a showing allowing the amendment becomes an option the trial court can choose. Id.
(`. . . and leave shall be given only upon a showing of good cause') (emphasis added). * However, in light of the overarching liberal policy of allowing amendments under Rule 15, the appropriate way to view the request for leave to amend, if a party demonstrates `good cause,' is as though the request had been brought more than 42 days before trial, when the trial court does not have `unbridled discretion' to deny the leave to amend, but can do so only upon the basis of a `valid ground' as stated above. Ex parte Bailey, 814 So.2d 867, 869 (Ala. 2001).
"_________________________
 "* A comparison of the language of Rule 15 — `and leave shall be given only upon a showing of good cause' — with the alternative phrase `and leave shall be given upon a showing of good cause' demonstrates the point."
Ex parte Liberty Nat'l Life Ins. Co., 858 So.2d at 953-54.
Because McGhee's "Motion to Substitute Fictitious Parties" was filed more than 42-days before the first trial setting, the amendment would generally fall within the "freely allowed" portion of the rule, and, thus, the trial court would have had to have a "valid ground" for disallowing the amendment. See Rule 15(a) ("Unless a court has ordered otherwise, a party may amend a pleading without leave of court, . . . and such amendment shall be freely allowed when justice so requires."). We note, however, that the trial court in this case "ordered otherwise" in its scheduling order by limiting the time period in which the parties could file an amendment. We must therefore consider whether the trial court's scheduling order impacts the trial court's right to refuse an amendment under Rule 15(a).
The Committee Comments on 1973 Adoption of Rule 16, Ala. R. Civ. P., which governs pretrial conferences, state: "Pre-trial orders cannot be effective unless the judge has the right to disallow amendments to pleadings filed subsequent to the pre-trial hearing." See Arfor-Brynfield, Inc. v. Huntsville MallAssocs., 479 So.2d 1146, 1149 (Ala. 1985) (upholding *Page 410 
the disallowance of an amendment proffered at trial because "the subject matter of the proffered amendment was known to the pleader at the time of the pre-trial conference and was not then offered"). However, when first faced with a question concerning the interplay between Rules 15(a) and 16, our supreme court held that "liberal allowance of amendment when justice so requires must take precedence over strict adherence to the pre-trial order in Alabama practice." Huskey v. W.B. Goodwyn Co., 295 Ala. 1,7, 321 So.2d 645, 648 (1975). Thus, the trial court's scheduling order does not change the fact that the trial court must have had a valid ground for refusing McGhee's amendment.
 2. Analysis of Whether the Trial Court Had a Valid Ground for Refusing the Proffered Amendment
In order to determine if the trial court properly disallowed the amendment to substitute Guest, Williams, Coker, and Chavis for fictitiously named party number one, we must determine whether the trial court had a valid ground for refusing the amendment. Although the trial court's order denying McGhee's "Motion to Substitute Fictitious Parties" does not indicate the basis for the denial, the co-employees, in their response in opposition to McGhee's motion, advanced three grounds for denying the motion. The first argument advanced by the co-employees — that McGhee's motion was filed six months after the date the trial court set as the last date for amendments — is, as explained above, overly simplistic and, standing alone, insufficient to form a valid reason for disallowing McGhee's amendment. The best argument advanced in support of the trial court's disallowance of McGhee's amendment is that he failed to meet the due-diligence requirement of Rule 9(h).
 "Alabama's fictitious party practice is controlled by Rule 9(h), Ala. R. Civ. P., which provides:
 "`When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.'"
Crawford v. Sundback, 678 So.2d 1057, 1059 (Ala. 1996). Under Rule 15(c)(4), an amendment relates back when "relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)." Our supreme court has explained that "[t]o invoke the relation-back principles of Rule 9(h) and 15(c)[(4)], the plaintiff (1) must state a cause of action against the party named fictitiously in the body of the original complaint and (2) must be ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time of the filing that the later-named party was in fact the party intended to be sued." Crawford, 678 So.2d at 1059 (citingColumbia Eng'g Int'l, Ltd. v. Espey, 429 So.2d 955 (Ala. 1983)). In addition, the amendment will relate back only if the plaintiff "`used due diligence in attempting to discover [the true identity of the fictitiously named party].'" Crowl v. KayoOil Co., 848 So.2d 930, 937 (Ala. 2002) (quoting Fulmer v.Clark Equip. Co., 654 So.2d 45, 46 (Ala. 1995)).
The basis for the due-diligence requirement has been explained as follows:
 "The diligent plaintiff who is truly ignorant of the defendant's identity at the time of filing the original complaint is not penalized. The recalcitrant plaintiff cannot, however, use the rule to gain what might otherwise amount to an open-ended statute of limitations." *Page 411 
Kinard v. C.A. Kelly Co., 468 So.2d 133, 135 (Ala. 1985). "Fictitious party practice should not be abused, and it was not intended for use whenever it is merely inconvenient for the plaintiff to learn the name of the true defendant." Bowen v.Cummings, 517 So.2d 617, 618 (Ala. 1987). Several cases have considered whether a plaintiff's actions in ascertaining the true identity of fictitiously named parties met the due-diligence requirement of Rule 9(h). See, e.g., Crowl,848 So.2d at 931-41; Crawford, 678 So.2d at 1060-61; Ex parte Stover,663 So.2d at 952; Ex parte Klemawesch, 549 So.2d 62, 63-65 (Ala. 1989); Bowen, 517 So.2d at 618; and Kinard,468 So.2d at 134-36.
In Kinard the plaintiff, who was injured when she fell on the premises of an apartment complex, instituted suit in August 1980.Kinard, 468 So.2d at 136. She failed to conduct discovery aimed at determining who the owners of the apartment complex were until January 1983. Id. The supreme court determined that she had not acted "reasonably in waiting for that length of time before attempting to determine the defendants' identities." Id.
In Bowen the plaintiff, who was allegedly injured in April 1983 by an emergency-room physician's malpractice, filed suit in April 1985 and sought to amend his complaint to substitute another physician only a few months later, in October 1985.Bowen, 517 So.2d at 617-18. In affirming the trial court's grant of the substituted physician's motion to dismiss, the supreme court determined that the plaintiff had not been diligent in determining the true identity of the fictitiously named party.Id. at 618. According to the court, the plaintiff, before filing suit, had attempted once to get copies of his hospital records and failed; he made no further attempts. Id. In addition, the court commented that, even after filing suit, the plaintiff's attorney had never attempted to discover the records.Id. The court stated:
 "Rule 9(h) was not meant to allow a party to sit back for almost two years and make only one attempt at learning the defendant's name, and then, failing, simply to list fictitious defendants. This would work a substantial injustice to the defendant and would violate the purpose behind our discovery statutes and our statutes of limitation.
 "Plaintiff not having complied with the spirit or letter of Rule 9(h) . . ., his complaint against [the physician] was properly dismissed."
Id.
Likewise, in Ex parte Klemawesch, the plaintiff "did not proceed in a reasonably diligent manner in order to ascertain the identity of the attending physician," who she alleged had committed medical malpractice and thereby caused her mother's death. Ex parte Klemawesch, 549 So.2d at 64. Although the plaintiff filed suit in June 1985, she did not initiate any discovery until October 1987, over two years later. Id. Her amendment was filed on January 31, 1989. Id. at 63. The plaintiff argued that she was "unaware of any question as to the identity of the attending physician at the time of her mother's treatment and death," and that, she said, she learned the name of the attending physician at a deposition of one of the named physicians. Id. at 64. However, the supreme court noted that the plaintiff had been aware that there was a question about the identity of the attending physician quite possibly since before filing suit, because there was an unidentified signature in the medical records she obtained, and at least since December 1986, when one of the named physicians had moved for a summary judgment and had proffered his own affidavit in which he "unequivocally stated that he was not on duty at the time of [the plaintiff's mother's] treatment *Page 412 
and death." Id. at 65. The supreme court concluded that the plaintiff's actions were "unreasonable" and issued a writ of mandamus compelling the trial court to dismiss the substituted physician from the action. Id.
In their response in opposition to McGhee's "Motion to Substitute Fictitious Parties" and at the hearing on the motion, the co-employees asserted that McGhee's attorney had in his possession, since April 2000, maintenance records on the mill that injured McGhee. Although they did not state that those records contained the names of Guest, Williams, Coker, and Chavis, they did indicate that, despite having those records since 2000, McGhee's attorney had failed to request through interrogatories the name of the custodian of the records or the name of the head of maintenance. Instead, despite conducting presuit discovery in 2000, McGhee waited to depose the co-employees until June 2002, nearly one year after instituting the suit. When he finally asked for the name of the head of maintenance, in a September 2002 deposition, the suit had been pending for 14 months and discovery had begun 31 months earlier in February 2000.
We cannot say that the length of time that elapsed before McGhee attempted to substitute the parties is any less "unreasonable" than the length of time that elapsed in Ex parteKlemawesch, Bowen, and Kinard. In the three years following his injury, McGhee failed to discover the true identities of his own co-employees. The inescapable conclusion is that McGhee failed to use due diligence to ascertain the true identities of the fictitiously named parties identified in his complaint. Accordingly, the trial court had a valid ground upon which to refuse McGhee's amendment.
 III. Conclusion
Because the affidavit in support of McGhee's Rule 56(f) motion failed to specify and explain the necessity of the outstanding discovery, the trial court properly denied the requested continuance of the hearing on the co-employees' summary-judgment motion. In addition, because McGhee does not challenge the merits of the trial court's summary judgment in favor of the co-employees, the summary judgment is affirmed. Finally, the trial court did not abuse its discretion by refusing to allow McGhee to amend his complaint to substitute Guest, Williams, Coker, and Chavis for fictitiously named party number one as described in his complaint because the co-employees presented a valid ground for that refusal — namely, that McGhee had not used due diligence in attempting to discover the true identities of fictitiously named party number one. Accordingly, we affirm all aspects of the judgments from which McGhee appeals.
APPLICATION OVERRULED; OPINION OF DECEMBER 12, 2003, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
YATES, P.J., and MURDOCK, J., concur in the result, without writing.
[1] Ninety days from February 11, 2002, is May 12, 2002, which was a Sunday; therefore, the last day to add a party would have been May 13, 2002. See Rule 6(a), Ala. R. Civ. P.
[2] Although Rule 4(a)(5), Ala. R.App. P., requires that appeals filed while a postjudgment motion is pending be held in abeyance until the motion is disposed of, it does not appear as though this court followed that rule. However, because McGhee's postjudgment motion was ultimately denied by operation of law, this court's failure to comply with the rule is of no consequence in this case.