SHORES, Justice.
This is an action for the validation of a proposed issue of sewer revenue bonds by Jefferson County, Alabama (the County), initiated by a petition by the County and the members of its governing body, pursuant to the provisions of § 6-6-750, et seq., Ala.Code 1975, in the Circuit Court of Jefferson County, Birmingham Division, against the taxpayers and citizens of Jefferson- County (the defendants) by the County and the members of its governing body. The district attorney of the County filed an answer, as required by law, alleging, among other things, that the proposed issue of bonds violated Amendment 73 to the Constitution of Alabama, and that the revenues pledged to the payment of the bonds were the result of illegal action by the Jefferson County Commission. Frances E. Shell and Carolyn J. Lipscomb intervened by filing an answer and counterclaim; Barbara Houts and Elizabeth R. Still intervened by filing an answer and counterclaim; and the City of Birmingham, a municipal corporation, the City of Bessemer, a municipal corporation, the City of Fairfield, a municipal corporation, Joe P. Bell, J. Hoyt Hall, Jr., and Jim Cooley intervened by filing an answer and counterclaim. The County filed an answer to the counterclaims. The said intervenors (inter-venors) participated fully in the hearing and briefing of the matter in the trial court.
During the .course of the hearing, a contention was made that the attorney general should have been served with a copy of the petition since the constitutionality of a statute of the State of Alabama was brought into question by the County during the course of the hearing. After the hearing and before the entry of the decree, the attorney general was served with a copy of all of the pleadings and filed with the court an acceptance and waiver of the hearing or notice of the proceeding.
The trial hearing was held before the Honorable William A. Thompson in the Circuit Court of Jefferson County, Birmingham Division, who, on January 10, 1984, *1333 rendered a decree confirming the validity of the proposed issue of bonds. Four of the intervenors and the defendants filed timely notices of appeal from the decree, and those appeals have been consolidated in this Court. We affirm.
The intervenors filed a motion to dismiss on November 21,1983, based on allegations of the existence of a prior pending claim on the issue in the Bessemer Division of the Jefferson County Circuit Court. No evidence or supporting affidavits were presented by the intervenors that appear in the record supporting these allegations. The intervenors’ motion was overruled by the Birmingham Circuit Court. The record contains a case action summary sheet from the Bessemer case, referred to by the inter-venors, which shows that the claims with respect to the 1983 sewer rates were dismissed in the Bessemer Division on November 15, 1983. The Bessemer court determined on a motion to dismiss in Case No. CY-83-494-C, that it did not have jurisdiction over the issue of the 1983 rates.
It is not controverted that the Jefferson County sewer system has become critically inadequate to meet the needs of the area. Some parts of the system which were constructed between 1900 and 1905 are worn out and falling in. Additionally, many of the sewer plants, such as Ensley, Cahaba, and Patton, have reached maximum capacity. With increased environmental regulations, almost every plant needs to be upgraded. The system has many holes in it, which means that during wet weather, storm water gets into the system and overloads the sewer plants. Great portions of the area served by the system are under moratorium. Others face the possibility of moratorium unless something is done to increase the capacity of the system. Many developments have capped sewers in place, but no trunk lines. Others have septic tanks overflowing onto the surface of the ground, causing health problems.
In response to these problems, the County Commission, through its staff, devised a capital improvement plan, projecting the financial needs of the county sewer system year by year, running to the year 2000.
To finance the capital improvement plan, Jefferson County plans to use assessments, cash flow from sewer revenues, federal EPA grants, and the proceeds of a proposed new $35,000,000 sewer bond issue. Ad valorem taxes are collected for the system, but all of them are pledged for past bond issues. The proposed bond issue is to be secured by the revenues from the sewer system. It is payable over a period of thirty years. There are covenants in the bond indenture to maintain sewer rates sufficient to cover operating expenses, debt service, and certain other funds designated in the indenture. The sewer rates adopted in 1983 meet these requirements and have not been, are not being, and cannot be used for any other purpose.
Essentially, the questions in this case deal with the legality of the bond issue and the sewer rates pledged to retire the bonds.
The appellants (defendants and interve-nors) contend that the trial court erred in three ways:
(1) In holding that Amendment 73 of the Constitution of Alabama does not prohibit the action of the County Commission in authorizing the bond issue and sewer user fees;
(2) In holding Act 619 of the 1949 Legislature, 1949 Regular Session, unconstitutional, which the appellants contend limits the amount of sewer fees Jefferson County is authorized to collect; and
(3) In refusing to abate the action.
For a better understanding of the constitutional and legislative issues involved in this appeal, it is helpful to review the history of both. In 1933, the legislature passed the Kelly Act, now §§ 11-81-160, et seq., Ala.Code 1975, to permit any county or incorporated municipality in Alabama to acquire a sanitary sewer system, to operate the system, and to issue sewer revenue bonds. The Kelly Act, still law, expressly authorizes the issuance of revenue bonds for “financing the acquisition, improvement, enlargement, extension and repair” *1334 of a sewer system. § ll-81-166(a)(l). These bonds are revenue bonds, to be paid solely from the revenues of the system, and do not constitute a debt of the issuer and do not require an election. The Kelly Act was held by this Court to be constitutional in Oppenheim v. City of Florence, 229 Ala. 50, 155 So. 859 (1934), and Smith v. Town of Guin, 229 Ala. 61, 155 So. 865 (1934).
Bond issues which were secured all or in part by the general credit of the county, unlike revenue bonds, created a debt of the county and were, thus, subject to the requirements of §§ 222 and'224 of the Constitution of Alabama. Section 222, as here pertinent, provides that bonds which create a debt of the county can be issued only after an election, receiving the approval of a majority vote of the qualified voters voting in such election. Section 224 (until increased to 5% in 1976 by Amendment 342) limited the debt of the county to an amount no greater than 3V2% of assessed value of the property in the county.
In an advisory opinion sought by the governor in 1933, the justices of this Court advised that if a Kelly Act bond issue is secured in part by a pledge of revenues of an existing system to finance an improvement to that system, then the bond issue constituted a debt for purposes of § 222 of the Constitution, and the bond issue must be submitted to the voters. Opinions of the Justices, 226 Ala. 570, 148 So. 111 (1933). (This construction of § 222 was expressly repealed as to cities by Amendment 107 in 1954 and by Amendment 398 in 1982 as to counties.) Because the same principle of debt was equally applicable to Section 224, it followed that a sewer revenue bond for the extension of an existing system would, under the reasoning of the justices in the advisory opinion, also be subject to the 3V2% limitation contained in § 224.
Thus, in 1948, prior to the adoption and ratification of' Amendment 73, Jefferson County had the authority to acquire, improve, and extend its sewer system, and to issue revenue bonds secured by sewer charges. However, under the Opinions of the Justices, supra, the limitations on borrowing contained in § 224 of the Constitution applied, if the authority was exercised so as to use the revenues from the existing system to secure the bond issue. It was against this background that Amendment 73 was proposed, adopted, and ratified in 1948. The pertinent provisions of Amendment 73 follow:
“Jefferson County Sewer Bonds
“In addition to any indebtedness now authorized, Jefferson county may become indebted and may issue bonds therefor in an amount not exceeding 3 percent of the assessed valuation of the taxable property in said county in order to pay the expenses of constructing, improving, extending and repairing sewers and sewerage treatment and disposal plants in said county. Said bonds shall be general obligations of Jefferson county but shall also be payable primarily from and secured by a lien upon the sewer rentals or service charges, which shall be levied and collected in an amount sufficient to pay the principal of and interest on such bonds, replacements, extensions and improvements to, and the cost of operation and maintenance of, the sewers and sewerage treatment and disposal plants. Such sewer rentals or service charges shall be levied upon and collected from the persons and property whose sewerage is disposed of or treated by the sewers or the sewerage treatment or disposal plants and whether served by the part of the sewer system then being constructed, improved, or extended or by some other part of such system....
“Before issuing any bonds or levying or collecting any such sewer service charges or rentals, the proposal shall first be submitted to and approved by a majority of the voters of the county voting at an election to be called by the governing body thereof....

“The governing body of Jefferson county shall have full power and authority to manage, operate, control and ad *1335 minister the sewers and plants herein provided for and, to that end, may make any reasonable and nondiscriminatory rules and regulations fixing rates and charges, providing for the payment, collection and enforcement thereof, and the protection of its property. This amendment is self-executing.
“The authority to issue bonds shall cease December 31, 1958. The authority to levy and collect sewer charges and rentals shall be limited to such charges as will pay the principal of and interest on the bonds and the reasonable expense of extending, improving, operating and maintaining said sewers and plants; and when the bonds shall have been paid off, service charges and rentals shall be accordingly reduced, it being the intent and purpose of this amendment that the expenses of needed improvements and extensions and maintenance and operation of the sewers and sewerage treatment and disposal plants and no other expenditures shall be paid from such service charges and rentals.”
The appellants argue that the first sentence of the last paragraph extinguished the pre-existing authority in Jefferson County to issue revenue bonds pursuant to the Kelly Act of 1933. This is a strained construction of the amendment and one which finds no support in logic or fact. They argue that the provision of the amendment, “[t]he authority to issue bonds shall cease December 31, 1958,” refers to the authority to issue all sewer bonds. We cannot agree. Rather, a reasonable reading of the language means that the County’s authority to issue general obligation bonds in excess of the restrictions of § 224 terminated on December 31,1958, as did its authority to issue the specific type bond authorized by the amendment, i.e., bonds payable from the revenues of the system, and which were also backed by the general obligation of the County. There is nothing in the amendment to support the argument that by its adoption, Jefferson County lost the authority to issue revenue sewer bonds which every county in the state has under the Kelly Act. This authority includes by § 11-81-161, Code 1975, the authority to construct sewer systems and extensions, enlargements, improvements, and repairs to such systems, and by § 11-81-166, the power to issue bonds to pay for such construction, and the authority to pledge the , revenues from the operations of such system to the payment of principal and interest on the bonds.
As we read it, Amendment 73 authorized Jefferson County to increase its debt limit by 3% of the assessed valuation of the taxable property in the County and permitted Jefferson County to issue a combination revenue and general obligation bond. The amendment required voter approval of the combination bonds issued thereunder, and the authority to issue such bonds in excess of the § 224 debt limit expired on December 31, 1958.
We agree with the conclusion reached by the trial court that Amendment 73 does not prohibit the issuance of sewer revenue bonds by Jefferson County pursuant to the Kelly Act, the plain language of which clearly authorizes such bonds. Darks Dairy, Inc. v. Ala. Dairy Commission, 367 So.2d 1378 (Ala.1979).
The second argument advanced by the appellants turns on the meaning of the remainder of the last paragraph of Amendment 73. They argue that the language does not allow the County Commission to set rates to cover a bond issue which in part covers facilities providing service to new customers. Approximately 80% of the proposed bond issue is to be used to repair and improve the existing system, and 20% is expected to be used to extend the system to residents of the County who have not heretofore benefited from the system, but who helped retire the general revenue obligation bonds issued in 1950, pursuant to Amendment 73. They argue that the second sentence limits the County Commission’s authority only to improve and repair the system as it existed after the issuance of the bonds permitted by Amendment 73.
First, we do not agree that the language of the last paragraph of Amendment 73 *1336 refers to a sewerage system frozen in time. Also, we do not agree that it forbids an extension of the existing system to new customers. Because we do not agree with the appellants that Amendment 73 extinguished Jefferson County’s authority to issue revenue bonds under the Kelly Act, ⅜ is to that act that we look. It expressly provides at § ll-81-166(b):
“(b) Any bonds issued under this article shall be made payable solely out of the revenues from the operation of a system or systems of the borrower and may be made payable from any such revenues without regard to whether or not such bonds are issued for the benefit of or with respect to the particular system or systems out of the revenues from which such bonds are made payable and without regard to whether or not the system or systems for the benefit of which the bonds are to be issued have been consolidated and combined with the system or systems from the revenues of which the bonds are made payable.”
The legislature has clearly authorized the action taken by the County, and the entire County benefits from the sewer system. As the Court said in Keene v. Jefferson County, 135 Ala. 465, 33 So. 435 (1902), after the legislature authorized the county to establish a sewer system running only, through the most populous area, financed by an ad valorem tax imposed on everyone in the county:
“It is shown that about two-thirds of the population of Jefferson county, or more than 100,000 people, live in the two valleys and at the foothills, through which the trunk lines of the sewers are proposed to be run, and that three-fourths in value of all the property in the county is within the area of drainage covered by these two trunk lines of sewer. The system in its beneficial effects, extends to the entire county for the protection of its water courses from pollution, and was intended to meet not only the present needs, but to fulfill in the future, the requirements of sanitation and health in cities and towns, and in all the thickly settled portions of the county. The health of the valleys drained is of great importance to every citizen of the county, in preventing the spread of contagious and infectious diseases throughout its borders. The prevention' of diseases is oftener better and cheaper than to cure them when they come.”
135 Ala. at 474, 33 So. at 438.
We, as did the trial court, hold that the extension of the sewerage system to new customers and the imposition of user fees are not prohibited by the language of Amendment 73 and are expressly authorized by § ll-81-166(b), Code 1975, which is applicable to Jefferson County. In addition, § ll-81-166(b), Code 1975, does not restrict the class of users upon which the fees may be imposed. It specifically states that the fees may be imposed
“without regard to whether or not such bonds are issued for the benefit of or with respect to the particular system or systems out of the revenues from which such bonds are made payable and without regard to whether or not the system or systems for the benefit of which the bonds are to be issued have been consolidated and combined with the system or systems from the revenues of which the bonds are made payable.”
Appellants next argue that Act 619 of the 1949 Regular Session restricts the authority of the County to fix sewer rates by limiting the sewer rates to 50% of the water bill. Amendment 73 to the Constitution, in addition to authorizing the issuance of combination revenue/general obligation bonds by Jefferson County, also provides:
“The governing body of Jefferson county shall have full power and authority to manage, operate, control and administer the sewers and plants herein provided for and, to that end, may make any reasonable and nondiscriminatory rules and regulations fixing rates and charges, providing for the payment, collection and enforcement thereof, and the protection of its property.... This amendment is self-executing.”
*1337 The simple answer to the appellants’ contention is that a self-executing constitutional provision may not be restricted by the legislature. The justices so advised in Opinions of the Justices, 287 Ala. 337, 251 So.2d 755 (1971), in an inquiry directed to legislation attempting to limit the authority of Jefferson County granted in Amendment 73. There the justices stated:
“The proposed amendments to House Bill 1077 [limiting the amount of sewer rates the County could impose] are both designed to restrict the governing body of Jefferson County as to the rates and charges“whieh it may exact for the use of the sewerage system. We hold, therefore, that those amendments run counter to Amendment LXXIII [73] to the Constitution of Alabama and, therefore, are unconstitutional.”
287 Ala. at 341, 251 So.2d at 759.
Amendment 73 clearly authorizes the County to set rates for sewer service. It does not limit that authority to 50% of the water charges. The amendment is a part of the organic law of this state, ratified by the people. It can be changed only by another amendment to the Constitution. The trial court correctly held that Act 619 was an ineffective effort on the part of the legislature and was, thus, unconstitutional.
The appellants also raise procedural issues which they contend require reversal. Again, we cannot agree.
First, they contend the trial court was without jurisdiction to proceed with this case because the attorney general was not initially served with the complaint in this litigation. He was, however, later served, and he accepted service and waived any objection prior to the court’s judgment. This was a proceeding brought pursuant to § 6-6-750, et seq., Ala.Code 1975, which provides for the judicial validation of obligations of counties, cities, or other government unit. It is a statutory procedure which is quite explicit. It does not require service of process upon the attorney general, but, to the contrary, requires that a copy of the petition be served upon the district attorney of the county in which the proceedings are pending. The district attorney was served pursuant to § 6-6-752 and participated in the proceeding. Thus, the applicable statute was complied with.
While a bond validation proceeding is similar to an action for declaratory judgment, which by § 6-6-227, requires service on the attorney general, it does not contain the requirement that the attorney general be served. The failure to initially serve the attorney general in this proceeding clearly did not oust the court’s jurisdiction, even if, by reference to the declaratory judgment statute, notice to him is implied, a position with which we do not agree.
Finally, the intervenors assert that the trial court was powerless to act in this matter because some prior claim had been filed in the Bessemer Division, which somehow related to some of the same issues involved in this proceeding. The record indicates that when the intervenors filed their motion to dismiss, raising the prior Bessemer litigation, the trial judge there had either dismissed or transferred to the Birmingham Division that portion of the Bessemer litigation which related to the sewer rates involved here. Thus, no issue was pending in Bessemer requiring the Birmingham Division to dismiss this bond validation proceeding.
We find no error in the order appealed from. The judgment of the trial court is, therefore, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.