Mark E. Lunsford, Montevallo Twin Homes, LLC, and Montevallo Square, LLC (hereinafter referred to collectively as "the landlords"), appeal from a judgment of the Jefferson Circuit Court declaring § 35-9-14, Ala. Code 1975 ("the statute"), unconstitutional. We affirm.
 I. Factual Background and Procedural History
In 1948 Jefferson County found it necessary to make improvements to its sewer *Page 328 
system. In order to avoid violating § 224 of the Alabama Constitution of 1901,[1] Jefferson County, acting pursuant to Amendment No. 73, Ala. Const.1901, now codified as Ala. Const. 1901 (Off.Recomp.), Local Amends. (Jefferson County, § 4) ("the amendment"), incurred bonded indebtedness "to pay the expenses of constructing, improving, extending and repairing sewers and sewerage treatment and disposal plants in [Jefferson] county." The amendment, proclaimed ratified on November 15, 1948, provided:
 "Said bonds shall be general obligations of Jefferson county but shall also be payable primarily from and secured by a lien upon the sewer rentals or service charges, which shall be levied and collected in an amount sufficient to pay the principal of and interest on such bonds, replacements, extensions and improvements to, and the cost of operation and maintenance of, the sewers and sewerage treatment and disposal plants. . . . [S]uch charges or rentals shall be a personal obligation of the occupant of the property the sewerage from which is disposed of by such sewers or treated in such plants and shall also be a lien upon such property, enforceable by a sale thereof."
(Emphasis added.)
After specifying December 31, 1958, as the expiration date for the authority to issue bonds, the amendment provided:
 "The authority to levy and collect sewer charges and rentals shall be limited to such charges as will pay the principal of and interest on the bonds and the reasonable expense of extending, improving, operating and maintaining said sewers and plants; and when the bonds shall have been paid off, service charges and rentals shall be accordingly reduced, it being the intent and purpose of this amendment that the expenses of needed improvements and extensions and maintenance and operation of the sewers and sewerage treatment and disposal plants and no other expenditures shall be paid from such service charges and rentals."
None of the bonds issued pursuant to the amendment remains outstanding. The statute, entitled "Tenant responsible for sewer services bill," became effective August 1, 2004; it provides:
 "Notwithstanding any other provision of law, any bill for sewer service received in the name of a tenant or tenants, shall be the sole responsibility of the tenant or tenants and shall not constitute a lien on the property where the sewer service was received."
Jefferson County, before and after[2] the passage of the statute, billed landlords for the delinquent sewer charges of their tenants and placed liens on landlords' properties for the nonpayment of those charges by tenants.
The landlords, acting on behalf of themselves and all other landlords similarly *Page 329 
situated, commenced an action in the Jefferson Circuit Court, seeking a judgment declaring that Jefferson County's practice of imposing liens against landlords for debts for sewer service incurred by and in the name of their tenants violated the statute. The landlords further sought injunctive relief and the refund of moneys collected after the effective date of the statute. The landlords contend that once all the bonds issued pursuant to the amendment were paid, Jefferson County's special rights with respect to collection of indebtedness, including the authority to impose liens on property of landlords for sewer charges incurred by and in the name of their tenants, expired. The landlords' action was consolidated with an action brought by Jefferson County against two landlords, seeking payment for their tenants' sewer charges. The relevant facts were stipulated by the parties, and the consolidated case was submitted to the trial court on cross-motions for a summary judgment.
The trial court entered a summary judgment in favor of Jefferson County and against the landlords. The trial court concluded that the statute was inconsistent with the amendment and that the statute was therefore unconstitutional. The order consolidating the landlords' action with the proceeding commenced by Jefferson County was vacated, and the action brought by Jefferson County was placed on the trial court's administrative docket. The landlords appeal from the summary judgment entered in their action against Jefferson County.
 II. Standard of Review
As this Court stated in Payton v. Monsanto Co.,801 So.2d 829, 832-33 (Ala. 2001) (quoting Ex parte Alfa Mut.Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999)):
"The standard by which this Court will review a motion for summary judgment is well established:
 "`The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989); § 12-21-12(d) [,] Ala. Code 1975. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871
(Ala. 1989).
 "`In our review of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala. 1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).'"
This Court has further stated, in reviewing a constitutional challenge to a statute:
 "The standard of review for determining the constitutionality of a statute was stated in State Board of Health v. Greater Birmingham Ass'n of Home Builders, *Page 330 Inc., 384 So.2d 1058, 1061 (Ala. 1980):
 "`Before turning to the constitutional issue posed in this case, it is appropriate to reiterate the fundamental proposition that validly enacted legislation is presumed to be constitutional. As we stated in Mobile Housing Board v. Cross, 285 Ala. 94, 97, 229 So.2d 485, 487 (1969):
 "`"Every presumption is in favor of the constitutionality of an act of the legislature and this court will not declare it invalid unless in its judgment, the act clearly and unmistakably comes within the inhibition of the constitution."
 "`We will not invalidate a statute on constitutional grounds if by reasonable construction it can be given a field of operation within constitutionally imposed limitations. See Ex parte Huguley Water System, 282 Ala. 633, 213 So.2d 799 (1968).'
"In Home Indemnity Co. v. Anders, 459 So.2d 836, 840
(Ala. 1984), this Court stated:
 "`In determining whether the act is constitutional, we are bound by the following presumption:
 "`"[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a co-ordinate branch of government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law."
 "`Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944).'
 "See Crosslin v. City of Muscle Shoals, 436 So.2d 862, 863 (Ala. 1983)."
Town of Vance v. City of Tuscaloosa, 661 So.2d 739,742-43 (Ala. 1995).
 III. Challenges to a Statute on Constitutional Grounds
In Rice v. English, 835 So.2d 157, 162 (Ala. 2002), this Court, citing Ex parte Selma Gulf R.R.,45 Ala. 696 (1871), reiterated "the settled principle that the people have forbidden the Legislature from conducting itself in a manner inconsistent with their constitution and when it does, it is incumbent upon the judiciary to nullify a legislative enactment contrary to the constitution." We there stated that "the authority of this Court to review challenges to acts of the Legislature on constitutional grounds is a bedrock principle of our State's legal heritage." 835 So.2d at 163.
However, in Ex parte Selma Gulf R.R., this Court cautioned:
 "No power of this grave nature [i.e., judicial review of legislative acts] is expressly given. Considering its importance, it is a little strange that it has been wholly omitted. But, grant that it exists. It can not be permitted to rest upon mere inference and argument; because, if the inference is a mistake, or the argument is false, its exercise is an usurpation by one branch of the government against the authority of another. Did the people mean to grant such a power, unless some express clause of the constitution was clearly disregarded? I think not."
45 Ala. at 728 (emphasis added).
 IV. Juxtaposition of the Statute Against the Amendment
We turn to the question whether in enacting the statute "some express clause of the constitution was clearly disregarded." *Page 331 Ex parte Selma Gulf R.R., 45 Ala. at 728. The landlords contend that the collection powers conferred on Jefferson County by the amendment expired with the payment of the last bond outstanding. They refer to the unambiguous provision terminating Jefferson County's authority to issue bonds pursuant to the amendment on December 31, 1958. They then contend that the phrase in the amendment, "it being the intent and purpose of this amendment that the expenses of needed improvements and extensions and maintenance and operation of the sewers and sewerage treatment and disposal plants and no other expenditures shall be paid from such service charges and rentals," requires the conclusion that all power to collect charges for the maintenance and operation of the sewer system financed by the bonds ceased upon the payment of the bonds. Specifically, the landlords state: "It follows, then, that since the County has no powers of issuance today, and since no bonds issued under [the amendment] are outstanding, the County can have no collection powers thereunder today." (Landlords' brief, p. 19.)
The landlords' construction, however, contradicts the plain language of the amendment. The cessation of the authority to issue bonds and the cessation of the authority to collect sewer charges are not inexorably linked as the landlords contend. The last paragraph of the amendment speaks directly to cessation of the authority to issue bonds. The first sentence of that paragraph, dealing solely with issuance of bonds, states: "The authority to issue bonds shall cease December 31, 1958." The next sentence in that paragraph deals exclusively with the separate subject of the authority to collect certain charges. It provides: "The authority to levy and collect sewer charges and rentals shall be limited to such charges as will pay the principal of and interest on the bonds and the reasonable expense of extending, improving, operating andmaintaining said sewers and plants. . . ." (Emphasis added.) Obviously, operation and maintenance are activities that do not necessarily terminate upon the payment of the last of the bonded indebtedness. The necessity for operation and maintenance of the sewer system continues today. Speaking directly to what occurs after the bonds have been paid off, the amendment provides: "[S]ervice charges and rentals shall be accordinglyreduced, it being the intent and purpose of this amendment that the expenses of needed improvements and extensions and maintenance and operation of the sewers and sewerage treatment and disposal plants and no other expenditures shall be paid from such service charges or rentals." (Emphasis added.) Clearly, the amendment does not contemplate the elimination of charges; in fact, it contemplates the continuation of the collection of service charges and rentals after the payment of the last of the bonded indebtedness. As this Court stated in Shell v. JeffersonCounty, 454 So.2d 1331, 1335-36 (Ala. 1984), construing the amendment: "[W]e do not agree that the language of the last paragraph of [the amendment] refers to a sewerage system frozen in time."
We return to the statute, § 35-9-14, which provides: "Notwithstanding any other provision of law, any bill forsewer service received in the name of a tenant or tenants, shall be the sole responsibility of the tenant or tenants andshall not constitute a lien on the property where the sewer service was received." (Emphasis added.) As previously noted, the amendment provides:
 "[S]uch charges or rentals [for, among other things, the cost of operating and maintaining the sewers and sewerage treatment and disposal plants] shall be a personal obligation of the occupant of the property the sewerage from which is disposed of by such sewers or treated in *Page 332 
such plants and shall also be a lien upon such property, enforceable by a sale thereof."
(Emphasis added.) It is axiomatic that the inclusion in a statute of the phrase "notwithstanding any provision of law" cannot trump a constitutional provision. See Opinion of theJustices No. 206, 287 Ala. 337, 341, 251 So.2d 755, 759
(1971) ("We have said that `no legislation may restrict or alter a self-executing constitutional provision.' In re Opinionof the Justices [No. 164], 252 Ala. 199, 40 So.2d 330
[(1949)], and authorities cited; Opinion of the Justices[No. 164], 269 Ala. 127, 111 So.2d 605 [(1959)]."). See also City of Bessemer v. McClain, 957 So.2d 1061, 1092
(Ala. 2006) (opinion on second application for rehearing) ("However, `[w]hen the Constitution and a statute are in conflict, the Constitution controls. . . .' Parker v.Amerson, 519 So.2d 442, 446 (Ala. 1987)."). The provision of the statute depriving Jefferson County of the right to impose liens on landlords for charges for sewer services incurred in the name of a tenant clearly conflicts with the amendment, and the amendment controls.
 V. Conclusion
The statute clearly disregards an express clause in the amendment. Ex parte Selma Gulf R.R. The presumption of the constitutionality of the statute has been overcome by the plain language of the amendment. We affirm the judgment of the trial court declaring § 35-9-14
unconstitutional as applied to Jefferson County in this case.
AFFIRMED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
[1] In 1948 Section 224 provided:
 "No county shall become indebted in an amount including present indebtedness, greater than three and one-half percentum of the assessed value of the property therein. . . . Nothing herein contained shall prevent any county from issuing bonds, or other obligations, to fund or refund any indebtedness now existing or authorized by existing laws to be created."
 Section 224 was subsequently amended by Amendment No. 342, ratified in 1976, which increased the debt limit for counties to five percent.
[2] According to Jefferson County, it ceased recording liens against landlords for a time during the pendency of this litigation. It resumed its former practice when the trial court declared the statute unconstitutional.