THOMAS, Judge.
On October 28, 2011, Jefferson County filed five separate actions seeking to enforce liens for unpaid sewer-service charges against five separate parcels of property owned by James F. Hilgers and Carolyn M. Hilgers, Jim Hilgers a/k/a James F. Hilgers, or Hilgers Real Estate Investments, LLC (“the defendants”). At the request of the parties, the actions were consolidated for purposes of discovery and trial. On October 22, 2012, the defendants filed a request for production of documents, in which they sought, among other things, documents relating to the components of the sewer-service charges; that is, they desired information explaining what portion or percentage of the sewer-service charges were attributable to the following items: capital improvements, administration, operation, maintenance, and debt service.
On October 29, 2012, Jefferson County objected to the requested discovery, arguing that the requests were over-broad and that they indicated that the defendants wished to challenge the county commission’s authority to set sewer-service charges. Also on October 29, 2012, Jefferson County moved for a summary judgment in each case; the motions were supported by affidavits and exhibits showing the unpaid sewer-service charges on each parcel. On November 6, 2012, the defendants filed a motion to compel discovery, to which Jefferson County responded on November 13, 2012. The defendants filed an opposition to Jefferson County’s motions for a summary judgment on November 13, 2012. The parties later filed memorandums of law in support of their positions.
On December 17, 2012, the trial court entered a partial summary judgment in each action in favor of Jefferson County “as to liability.” After a hearing on damages, i.e., the amount of the unpaid sewer-service charges due for each parcel, the trial court entered a judgment in each action for the sewer-service charges due and owing on December 21, 2012.[1] The defendants appealed each of the summary judgments in favor of Jefferson County on January 23, 2013. This court consolidated the appeals.
On appeal, the defendants’ main argument is that Jefferson County did not have the authority to impose liens on the parcels for unpaid sewer-service charges. *412 The defendants further argue that they were entitled to the discovery they sought in their motion to compel and that the trial court’s entry of the summary judgments in favor of Jefferson County was premature because the discovery the defendants sought was still pending. We affirm.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).
The issue central to the resolution of these appeals is whether Jefferson County has the authority to impose a lien on the property from which sewage is disposed through its sewerage system under Ala. Const.1901, Local Amendments, Jefferson County, § 4 (Off. Recomp.) (formerly Amendment No. 73) (“the Amendment”); Ala.Code 1975, § 11-81-166, a portion of the Kelly Act, codified at § 11-81-160 et seq.; and Act No. 619, Ala. Acts 1949 (“Act No. 619”). To decide these appeals, we must construe these provisions, mindful that one of the most basic principles of statutory construction is that words in a statute are to be given their commonly understood meaning, see DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998), and that we must presume that “ ‘every word, sentence, or provision [in a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.’ ” Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997) (quoting 82 C.J.S. Statutes § 316 at 551-52 (1953)). We turn now to a discussion of the text of those provisions that are necessary to an understanding of the issue.
The Kelly Act, which was enacted in 1933, permits counties and incorporated municipalities to acquire, among other things, a sanitary sewer system. § 11 — 81— 161(a). To that end, a county may issue revenue bonds to acquire, improve, enlarge, extend, or repair a sanitary sewer system. § 11 — 81—166(a)(1). Further, § ll-81-166(b) requires that bonds issued under the Kelly Act “be made payable solely out of the revenues from the operation of a system or systems of the borrower,” and § ll-81-166(e) states that “[n]o bond or coupon issued pursuant to [the Kelly Act] shall constitute an indebtedness of the borrower issuing the same within the meaning of any state constitutional provision or statutory limitation.”
The Amendment was ratified in 1948. It provided that Jefferson County could incur bonded indebtedness exceeding the then three and one-half percent debt limit in order to finance improvements to its sewer system.[2] The Amendment, in pertinent part, reads as follows:
*413 “In addition to any indebtedness now authorized, Jefferson county may become indebted and may issue bonds therefor in an amount not exceeding 3 percent of the assessed valuation of the taxable property in said county in order to pay the expenses of constructing, improving, extending and repairing sewers and sewerage treatment and disposal plants in said county. Said bonds shall be general obligations of Jefferson county but shall also be payable primarily from and secured by a lien upon the sewer rentals or service charges, which shall be levied and collected in an amount sufficient to pay the principal of and interest on such bonds, replacements, extensions and improvements to, and the cost of operation and maintenance of, the sewers and sewerage treatment and disposal plants. Such sewer rentals or service charges shall be levied upon and collected from the persons and property whose sewerage is disposed of or treated by the sewers or the sewerage treatment or disposal plants and whether served by the part of the sewer system then being constructed, improved, or extended or by some other part of such system; and such charges or rentals shall be a personal obligation of the occupant of the property the sewerage from which is disposed of by such sewers or treated in such plants and shall also be a lien upon such property, enforceable by a sale thereof.
[[Image here]]
“The governing body of Jefferson county shall have full power and authority to manage, operate, control and administer the sewers and plants herein provided for and, to that end, may make any reasonable and nondiscriminatory rules and regulations fixing rates and
the Alabama Constitution in 1948 set a debt limit of three and one-half percent; Amend-charges, providing for the payment, collection and enforcement thereof, and the protection of its property. Liens for sewer rentals or service charges shall be foreclosed in such manner as may be provided by law for foreclosing municipal assessments for public improvements. This amendment is self-executing.
“The authority to issue bonds shall cease December 31, 1958. The authority to levy and collect sewer charges and rentals shall be limited to such charges as will pay the principal of and interest on the bonds and the reasonable expense of extending, improving, operating and maintaining said sewers and plants; and when the bonds shall have been paid off, service charges and rentals shall be accordingly reduced, it being the intent and purpose of this amendment that the expenses of needed improvements and extensions and maintenance and operation of the sewers and sewerage treatment and disposal plants and no other expenditures shall be paid from such service charges and rentals.”
Act No. 619, which was enacted in 1949, states in § 1 that it is intended to
“supplement [the Amendment], and to enable Jefferson County to construct, improve, extend and repair sewers and sewerage treatment and disposal plants in said County and to exercise the power and authority given by [the Amendment] to levy sewer rentals or sewer service charges upon and collect from the persons and property whose sewerage is disposed of or treated by such sewers or sewerage treatment or disposal plants and to make such rentals or charges a personal obligation of the occupant of the property the sewerage from which is disposed of by such sewers or treated in
ment No. 342 increased the debt limit to five percent in 1976.
*414 such plants and also a lien upon such property and to provide effective means for the collection of such rentals or charges and to insure that revenue derived from such rentals and charges is applied as provided in [the Amendment]. This Act shall be liberally construed in conformity with such purpose.”
Section 4 of Act No. 619 grants the county commission the power to levy sewer rentals or service charges. That section further provides that “[s]uch sewer rentals or service charges may be collected from, and be a lien upon, any property served by the sewerage system prior to as well as after the time when improvements financed by the issuance of bonds authorized under [the Amendment] shall be begun.” Section 5 of Act No. 619, among other things, attempted to limit the sewer-service charges, where the service was based on the consumption of water alone, to an amount not to exceed 50% of the water bill of the property involved. Our supreme court struck down § 5 as unconstitutional in Shell v. Jefferson County, 454 So.2d 1331, 1337 (Ala.1984), because, it concluded, the attempt to limit the amount of the sewer-service charges conflicted with the language contained in the Amendment granting the county commission “full power and authority to ... fix[ ] rates and charges.”[3]
Under § 7 of Act No. 619, sewer-service charges are charged to the parcel of real property from which the sewerage originated. Furthermore, § 9 of Act No. 619 provides that “unpaid [sewer-service charges] and all interest accruing thereon shall be a lien on such parcel of real property.” In addition to other rights set out in Act No. 619, § 13 empowers the county commission to foreclose on any lien for unpaid sewer-service charges “in any such manner as may be provided by law for foreclosing municipal assessments for public improvements,” which procedure is set out in Ala.Code 1975, § 11-48-1 et seq.
Based on the above-quoted and explained portions of the Amendment, Act No. 619, and the Kelly Act, the defendants argue that Jefferson County does not have the authority to assess the entire amount of unpaid sewer-service charges for each parcel of property as a lien against the property because, they contend, that right exists only in relation to revenue bonds issued under the Amendment and not to bonds issued under the Kelly Act. That is, the defendants contend that the unpaid sewer-service charges should be apportioned, with only those amounts that were charged to repay any bonds under the Amendment or those amounts related to the reasonable expenses of extending, improving, operating, and maintaining the sewer system being imposed as a lien on *415 the parcels of real property. Thus, the defendants concede that a lien may be imposed upon their properties under the Amendment for the reasonable expenses of extending, improving, operating, and maintaining a sewer system.
However, the defendants argue that the Kelly Act grants Jefferson County no authority to impose a lien on real property as a result of the issuance of Kelly Act'bonds under § 11-81-166. Jefferson County contends that its power to set sewer-service charges, to collect sewer-service charges, and to impose a lien against a parcel of property serviced by the sewer system for unpaid sewer-service charges is not limited to only that portion of those charges that arise from the repayment of the bonds issued pursuant to the Amendment or that arise from the reasonable expenses of extending, improving, operating, and maintaining the sewer system. That argument is supported by Lunsford v. Jefferson County, 973 So.2d 327, 329 (Ala.2007), in which our supreme court affirmed a trial court’s judgment determining Ala.Code 1975, § 35-9-14, unconstitutional.
In Lunsford, landlords sued Jefferson County, seeking a judgment declaring that the county’s imposition of liens against properties owned by the landlords for unpaid sewer-service charges incurred by tenants violated § 35-9-14, which stated that bills for sewer service would be the sole responsibility of the tenant and that such bills would not “constitute a lien on the property where the sewer service was received.” Lunsford, 973 So.2d at 328 & 329. Based on the fact that the Amendment provided that the authority to issue bonds pursuant to the Amendment expired in December 1958 and based on the statement indicating that the purpose of the Amendment was “that the expenses of needed improvements and extensions and maintenance and operation of the sewers and sewerage treatment and disposal plants and no other expenditures shall be paid from such service charges and rentals,” the landlords argued that Jefferson County had no power to collect sewer-service charges under the Amendment after its authority to issue bonds under the Amendment had expired and after all bonds issued under the Amendment had been paid. Id. at 331. Our supreme court explained that the construction urged by the landlords “contradicted] the plain language of the [Ajmendment,” which clearly envisioned that sewer-service charges would be necessary to operate and maintain the sewer systems that had been constructed with the assistance of the bonds issued under the Amendment. Id. Based on the language of the Amendment indicating that sewer-service charges would be reduced after the payment of the bond debt incurred under the Amendment, our supreme court concluded that, “[cjlearly, the [Ajmendment does not contemplate the elimination of charges; in fact, it contemplates the continuation of the collection of service charges and rentals after the payment of the last of the bonded indebtedness.” Id. The language our supreme court relied upon makes it clear that, even after the bonds issued under the Amendment have been paid, Jefferson County could continue to levy and collect sewer-service charges to cover “the expenses of needed improvements and extensions arid maintenance and operation of the sewers and sewerage treatment and disposal plants.” Id.
Jefferson County also relies on Act No. 619 to support its right to impose liens for unpaid sewer-service charges. We note that many of the sections of Act No. 619 contain language nearly identical to, or similar to, the language utilized in the Amendment. Sections 4, 9, and 13 *416 echo the rights of the county commission to set sewer-service charges, state that unpaid sewer-service charges are a lien upon the real property to which sewer services are provided, and grant the county commission the power to enforce the lien. Thus, like Jefferson County, we agree that Act No. 619 also provides a basis for Jefferson County’s power to impose a lien for the unpaid sewer-service charges on the property provided sewer services. However, Act No. 619 merely mirrors and further defines the rights of Jefferson County under the Amendment, and Jefferson County’s reliance on it does not completely resolve the remainder of the defendants’ arguments regarding apportionment of the unpaid sewer-service charges.
The defendants further argue that the language of the Amendment and the lack of language relating to the creation of a lien against the property serviced by the sewer system in the Kelly Act precludes that portion of sewer-service charges intended to pay off indebtedness associated with bonds issued pursuant to the Kelly Act from becoming a lien against the property to which sewer service is provided. This is so, they contend, because, unlike the Amendment, the Kelly Act contains no provision authorizing a lien on the property serviced by the sewer system and because the revenue bonds issued under the Kelly Act are for acquisition, improvement, enlargement, extension, and repair of the sewer system. Indeed, the Kelly Act does not contain any provisions speaking specifically to the power of a county to collect sewer-service charges, much less a provision relating to creation of a lien upon the property receiving sewer services. However, we cannot conclude that lack of such provisions lends support to the defendants’ argument.
In fact, the fact that bonds issued pursuant to the Kelly Act are for the purposes of acquiring, improving, enlarging, extending, and repairing the sewer system does not support the conclusion that Kelly Act bonds do not fall within the permitted use for continued sewer-service charges in the Amendment. That is, we cannot conclude that the use of Kelly Act bonds for the purpose of acquiring, improving, enlarging, extending, and repairing the sewer system is not equivalent to using those bonds as a means to finance “the expenses of needed improvements and extensions and maintenance and operation of the sewers and sewerage treatment and disposal plants,” which serve as a basis for Jefferson County’s continued power to levy and collect sewer-service charges and to impose liens for unpaid sewer-service charges under the Amendment. We agree with Jefferson County that the liens, including any portion that might have been intended to repay Kelly Act bond indebtedness, were properly imposed against the defendants’ properties under the power provided to it in the Amendment and Act No. 619.
We next consider the defendants’ arguments that the trial court erred in failing to rule on their motions to compel discovery and in failing to postpone ruling on the motions for a summary judgment pending further discovery. As noted above, the defendants sought, and were not provided, documents or other information relating to what portion or percentage of the sewer-service charges were attributable to the following items: capital improvements, administration, operation, maintenance, and debt service. They moved the trial court to compel production of that information, but the trial court never expressly ruled upon their motions. Further, in their memorandums in opposition to the motions for a summary judgment, the defendants briefly requested *417 that the trial court either deny or decline to rule upon the summary-judgment motions pending their receipt of the requested discovery.
We first note that, although their brief on appeal relies on caselaw interpreting Rule 56(f), Ala. R. Civ. P., which governs the continuance of a summary-judgment ruling or hearing based on the pendency of discovery, the defendants never actually complied with the specific requirements of Rule 56(f). In their brief, the defendants quote McGhee v. Martin, 892 So.2d 398, 401 (Ala.Civ.App.2004) (quoting Wright v. State, 757 So.2d 457, 459 (Ala.Civ.App.2000) (internal citations omitted)), thusly: “ ‘Although the pendency of discovery does not alone bar a summary judgment, if the nonmoving party can demonstrate that the outstanding discovery is crucial to his case, then it is error for the trial court to enter a summary judgment before the discovery has been completed.’ ” However, the sentence following the quoted material from McGhee states: “ ‘To show that the discovery sought is crucial to his ease, the non-moving party should comply with Rule 56(f)....’” Our supreme court has stated that “[a] party seeking the shelter of Rule 56(f) must offer an affidavit explaining to the court why he is unable to make the substantive response required by Rule 56(e).” Hope v. Braman, 557 So.2d 1208, 1213 (Ala.1989). Conversely, our supreme court has noted that “[a] pending motion to compel production (Parrish [ v. Board of Comm’rs of Alabama State Bar, 533 F.2d 942 (5th Cir.1976) ]) and a motion to compel answers to interrogatories, which has been granted (Noble [ v. McManus, 504 So.2d 248 (Ala.1987) ]) when the evidence before the court clearly shows that the evidence sought is crucial to the non-moving party’s case, have been held sufficient compliance with Rule 56(f).” Reeves v. Porter, 521 So.2d 963, 965 (Ala.1988).
Assuming the motion to compel and the brief reference in the defendants’ memorandums of law in opposition to the motions for a summary judgment minimally meet the requirements of Rule 56(f), the issue is whether the evidence sought was, in fact, crucial to the defendants’ position that the liens imposed upon their properties could not have been imposed because at least some portion of the liens was attributable to repayment of bonds Jefferson County had issued pursuant to the Kelly Act. Because we have concluded that Jefferson County had the power under the Amendment and Act No. 619 to impose the liens at issue, regardless of whether any portion of those liens was attributable to repayment of indebtedness associated with bonds issued under the Kelly Act, the information the defendants sought to discover was not relevant to the resolution of the legal issue presented to the trial court in the motions for a summary judgment. Thus, we conclude that the trial court did not err by considering the summary-judgment motions before the defendants received the requested information and that the trial court did not err by failing to rule on the motion to compel before entering the summary judgments in favor of Jefferson County.
2120332 — AFFIRMED.
2120333 — AFFIRMED.
2120334 — AFFIRMED.
2120335 — AFFIRMED.
2120336 — AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. In light of the arguments made on appeal, the amount of the unpaid sewer-service charges assessed for each parcel is not relevant to the outcome of these appeals.

. As explained in Lunsford v. Jefferson County, 973 So.2d 327, 328 n. 1 (Ala.2007), § 224 of

. Although a reading of the opinion issued in Shell might lead one to conclude, as do the defendants, that Act No. 619 was struck down in its entirety, we cannot agree. The determination that Act No. 619 was unconstitutional was based solely upon its attempt to limit the county commission’s ability to set sewer-service charges; the only section of Act No. 619 that attempted to limit the county commission’s power was § 5. Thus, we conclude that Shell implicitly determined that only § 5 of Act No. 619 was unconstitutional. This reading of Shell is bolstered by the principle that ”[c]ourts will strive to uphold acts of the legislature” and the fact that Act No. 619 contained a severability clause in § 17, which indicated that the legislature desired that only the offending section of Act No. 619 be invalidated, leaving the remaining sections of Act No. 619, many of which contained language mirroring that used in the Amendment, "intact and in force.” City of Birmingham v. Smith, 507 So.2d 1312, 1315 (Ala. 1987); see also Mitchell v. Mobile Cnty., 294 Ala. 130, 134, 313 So.2d 172, 175 (1975) (”[I]f the remaining portions of an Act are complete within themselves, sensible and capable of execution, the Act will stand where invalid portions were deleted in accordance with a severability clause.”).